## A07A1500. SALINAS-GOMEZ v. THE STATE.
(651 SE2d 501)

BERNES, Judge.

A jury convicted Gonzalo Salinas-Gomez of aggravated assault with intent to rape. On appeal, Gomez contends the trial court erred in admitting into evidence pretrial statements he made to a police officer because he did not knowingly and voluntarily waive his *Miranda*[1] rights. He further contends the trial court erred in allowing testimony about rape kits generally and about the rape kit performed on the victim, since the results of the victim's rape kit were not admitted into evidence. Finding no error, we affirm.

On appeal from a criminal conviction, we construe the evidence in the light most favorable to the jury verdict. *Ellis v. State*, 283 Ga.

---

App. 808, 809 (642 SE2d 869) (2007). So viewed, the evidence adduced at trial reflects that Gomez and his wife, the victim, were separated due to marital difficulties. On the afternoon of February 13, 2004, the victim came home from work. While she was making the bed, Gomez entered the home, came into the bedroom, and grabbed the victim from behind. Gomez threw the victim on the bed, pulled down her underwear, and attempted to have sexual intercourse with her as she struggled against him. There was conflicting evidence at trial as to whether Gomez actually had sexual intercourse with the victim as he held her down.

Following the incident, the victim, who was unable to speak English, waited for her son to come home from school. She then had her son call the police. During a police interview, the victim told the interviewing officer that Gomez had raped her. The victim also went to the hospital, where she agreed to have a rape kit performed.

Gomez, who also could not speak English, went voluntarily to the police station, where a police officer who spoke Spanish began talking with him about the events of the afternoon. After Gomez stated that he had thrown the victim onto the bed, the officer stopped the interview and read Gomez his *Miranda* rights from an "Advice of Rights" form, translating the rights into Spanish for him. The officer had Gomez initial and sign the form, indicating that he understood and was waiving his right to remain silent, his right to have an attorney present during the interview, and his right to have an attorney appointed at no cost if he could not afford one. After agreeing to waive his *Miranda* rights, Gomez admitted that he had attempted to have sex with the victim while she resisted, but claimed that he had never been able to penetrate her because of impotency problems. Gomez then wrote out his account of what had happened in Spanish.

Following his police interview, Gomez was arrested, indicted, and tried on one count of rape. After conducting a pre-trial *Jackson-Denno*[2] hearing, the trial court found that Gomez's confession was made after a knowing and voluntary waiver of his *Miranda* rights. Consequently, the trial court allowed the interviewing officer to testify at trial about Gomez's statements during the police interview and allowed the state to introduce Gomez's written statement, which the officer translated for the jury. The trial court also allowed a nurse who examined the victim at the hospital to testify about rape kits generally and about the fact that a rape kit was performed on the victim. The state did not introduce through testimony or otherwise the actual results of the rape kit examination. After hearing all the

---

[2] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

evidence, the jury convicted Gomez of the lesser included offense of aggravated assault with intent to rape.

1. Gomez argues that the trial court erred in admitting his post-*Miranda* oral and written statements because they were not knowingly and voluntarily given. Specifically, Gomez contends that the record shows that he was unable to understand his *Miranda* rights because the interviewing officer did not properly translate them from English into Spanish.[3] We disagree.

"A post-*Miranda* custodial statement is admissible if, under the totality of the circumstances, the defendant's waiver of rights was knowing and voluntary." *Moyer v. State*, 275 Ga. App. 366, 372 (4) (620 SE2d 837) (2005). A trial court's decision to admit such a statement will not be disturbed unless clearly erroneous. *Shelby v. State*, 265 Ga. 118, 119 (2) (453 SE2d 21) (1995).

During the *Jackson-Denno* hearing and at trial,[4] the interviewing officer testified that she grew up speaking Spanish and is routinely asked to translate in investigations involving victims or suspects who only speak Spanish. According to the officer, she explained to Gomez at the beginning of the voluntary interview that she was there because she could communicate to him in Spanish. Gomez appeared alert and sober to the officer. The officer testified that when she determined that Gomez needed to be advised of his *Miranda* rights, she translated the rights listed on the "Advice of Rights" preprinted form from English to Spanish as literally as possible so that Gomez could understand them. According to the officer, after she orally translated each right listed on the form to Gomez, she would specifically ask him if he understood what she had just said. The officer further testified that Gomez told her that he understood each of the rights given to him, initialed and signed the "Advice of Rights" form indicating that he agreed to waive his rights, and agreed to speak with her and write out a written statement without an attorney present. Finally, the officer testified that during the course of the

---

[3] Gomez also argues that the interviewing officer informed him of his *Miranda* rights too late and instead should have done so at the very start of the interview. But, even assuming there was error in the admission of his pre-*Miranda* statement, its admission was harmless. The only potentially incriminating pre-*Miranda* statement made by Gomez was that he threw the victim on the bed. Following that statement, he was immediately advised of his *Miranda* warnings, after which he again voluntarily provided the same information to the officer and then went on to give a fuller, more detailed description of what had occurred that was consistent with his prior statement. Under these circumstances, the admission of the pre-*Miranda* statement was harmless. See *Dorsey v. State*, 285 Ga. App. 510, 512 (1) (b) (646 SE2d 713) (2007).

[4] In reviewing the admission of a defendant's statement, we are not limited to evidence presented at the *Jackson-Denno* hearing. See *Stapleton v. State*, 235 Ga. 513, 516 (1) (220 SE2d 269) (1975).

interview, she never coerced, threatened, or promised Gomez anything in return for his decision to speak with her without an attorney.

Gomez nevertheless argues that the evidence shows that he did not understand all of his *Miranda* rights because one of the Spanish words used by the officer in translating the rights to him had two possible meanings. Gomez contends that, as a result, the concept that he could have an attorney appointed to represent him at the interview was never clearly and properly communicated to him. The record, however, belies Gomez's contention. The officer testified that although the word at issue did have two meanings, she made sure that Gomez understood all of the concepts that she was trying to communicate to him, by stopping and clarifying or using different words if necessary until he understood. Furthermore, Gomez himself testified through a translator at the *Jackson-Denno* hearing that the reason he never asked for an attorney during the interview was because he believed the matter was so simple and straightforward that he did not need an attorney present.

Given this record, the trial court was authorized to find that Gomez's oral and written statements given to the officer were knowing and voluntary under the totality of the circumstances. See *Duran v. State*, 274 Ga. App. 876, 878-879 (2) (619 SE2d 388) (2005); *Nguyen v. State*, 269 Ga. App. 730, 731 (1) (605 SE2d 130) (2004); *Granados v. State*, 244 Ga. App. 153, 155 (4) (534 SE2d 886) (2000); *Peinado v. State*, 223 Ga. App. 271, 273 (1) (c) (477 SE2d 408) (1996). The admission of the statements at trial, therefore, was proper.

2. Gomez also contends that the nurse's testimony concerning rape kits generally and the rape kit performed in this case was irrelevant and should have been excluded because the actual results of the rape kit performed on the victim were never introduced into evidence. He contends that the jury was unduly prejudiced by the nurse's testimony. We disagree. The jury acquitted Gomez of the rape charge. Any error in the admission of the challenged testimony was harmless. See, e.g., *Robinson v. State*, 270 Ga. App. 869, 870 (2) (608 SE2d 544) (2004); *Perry v. State*, 78 Ga. App. 273, 276 (2) (50 SE2d 709) (1948).

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED AUGUST 30, 2007.

*Hernan, Taylor & Lee, Jerome Lee*, for appellant.
*Scott L. Ballard, District Attorney*, for appellee.