A07A1536. DAILEY v. THE STATE.
(652 SE2d 599)

MILLER, Judge.

Following a jury trial, James Monroe Dailey was convicted of one count each of rape, incest, child molestation, and cruelty to children. He now appeals from the trial court's denial of his motion for a new trial, asserting as error certain evidentiary rulings by the trial court and ineffective assistance of counsel. Discerning no error, we affirm.

"On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence." (Citation and punctuation omitted.) *Drammeh v. State*, 285 Ga. App. 545, 546 (1) (646 SE2d 742) (2007). So viewed, the evidence shows that in July 2002, Dailey's then 16-year-old daughter, B. D., told a friend that she had been raped by her father. The friend's mother took B. D. to a local hospital for a rape examination and the hospital contacted local law enforcement. Following an investigation, Dailey was arrested and charged with two counts of rape, two counts of incest, and single counts of child molestation and cruelty to children.[1]

The direct evidence at trial included the testimony of B. D. and expert testimony demonstrating that semen and other physical evidence taken from the daughter matched Dailey's DNA. Certain evidence that Dailey sought to introduce was barred by the trial court

---

[1] The jury acquitted Dailey of one count of rape and one count of incest.

as being inadmissible. This evidence included the results of a polygraph test administered by the Georgia Bureau of Investigation ("GBI"), certain writings of B. D., including letters and poems, Dailey's testimony that he had been previously diagnosed with genital herpes, and testimony purportedly showing that B. D. could have obtained Dailey's semen from one or more used condoms discarded in the trash can at the Dailey residence.

After his conviction, Dailey moved for a new trial, asserting that the trial court erred with respect to the above-referenced evidentiary rulings and that he received ineffective assistance of counsel.

1. "As a general rule, admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse." (Citation and punctuation omitted.) *Drammeh*, supra, 285 Ga. App. at 548 (2). Here, Dailey argues that the trial court abused its discretion with respect to five different evidentiary rulings, each of which we address below.

(a) Dailey first claims that the trial court erred in refusing to admit the results of a polygraph examination administered to him by the GBI. We disagree.

Under Georgia law, "[a]bsent an express stipulation by the State and the accused that the results of a polygraph test will be admitted in evidence, the results are inadmissible." *Willis v. State*, 249 Ga. 261, 265 (2) (290 SE2d 87) (1982). While "stipulations of this kind generally should be either in writing or made in open court," express oral stipulations are also enforceable. *Dein v. Mossman*, 244 Ga. 866, 870 (3) (262 SE2d 83) (1979).

Although Dailey concedes that there was no written stipulation in this case, he argues that the parties had an oral stipulation as to this issue. As evidence of this oral agreement, Dailey points to a memo written by an investigator for the prosecutor's office and sent to the GBI polygraph examiner in anticipation of the test being administered to Dailey. The memo, which sets out the facts of the case and outlines the questions the district attorney's office would like to have asked during the course of the examination, refers to the polygraph as being "stipulated." Dailey argues that this memo, from an employee of the district attorney's office and referencing a "stipulated" polygraph examination, demonstrates the existence of an oral stipulation regarding the admissibility of the exam's results.

This argument, however, is directly contravened by the testimony of the attorney who represented Dailey at the time the polygraph examination was arranged and administered. At the hearing on Dailey's motion for a new trial, this attorney testified that the State refused to stipulate to the admissibility of the GBI polygraph, after learning that Dailey had already taken and passed a privately

administered polygraph regarding the case. The attorney further explained that he nevertheless proceeded with the GBI polygraph thinking that it could be used either to persuade the district attorney's office to dismiss the case or in negotiating a plea for Dailey. In light of this testimony, the trial court did not err in refusing to admit the polygraph into evidence at Dailey's trial. See *Peralta v. State*, 276 Ga. 218, 219 (576 SE2d 853) (2003) ("The trial court's findings of fact on motion for new trial are upheld unless clearly erroneous. [Cits.]").

(b) Dailey next challenges the trial court's refusal to admit into evidence certain writings of B. D., including poems, letters, personal notes, and works of fiction.

Dailey's defense appears to have been premised, at least in part, on the theory that B. D. was seeking to retaliate against him for punishments he had imposed. The conduct for which B. D. was punished included alleged sexual activity, which her parents accused her of when they discovered some of her personal papers, on the day she would later accuse her father of rape.

Dailey wanted to introduce these papers as evidence of the conduct that resulted in B. D.'s being punished. Following an in camera hearing, the trial court ruled that the papers were not admissible, because some of the material violated Georgia's rape shield statute.[2] The trial court further found that the material was simply too speculative to show that B. D. had a retaliatory motive. On appeal, Dailey offers no legal authority or reasoned argument as to why the trial court's ruling on this issue constituted error, thereby abandoning this enumeration of error. See *Davis v. State*, 244 Ga. App. 345, 349 (7) (535 SE2d 528) (2000); Court of Appeals Rule 25 (c) (2).

(c) Dailey further claims that the trial court erred in refusing to admit two letters written by B. D. after the State "opened the door" to their admission. At trial, the prosecutor elicited testimony from B. D. that she had, in the past, practiced self-mutilation and had entertained thoughts of suicide. In response, Dailey sought to introduce into evidence two specific letters written by B. D. to an individual named "Jermey," arguing that the evidence was necessary to counter any impression the jury might have received that B. D.'s self-destructive tendencies resulted from sexual abuse she suffered at the hands of her father. The defense theory apparently was that these letters could demonstrate that B. D.'s suicidal thoughts and acts of self-mutilation resulted from her relationship with "Jermey."

---

[2] OCGA § 24-2-3 (a) prohibits the introduction of evidence "relating to the past sexual behavior" of a victim and providing that "past sexual behavior includes ... [the victim's] general reputation for promiscuity, nonchastity, or sexual mores contrary to the community standards."

The trial court allowed defense counsel to examine B. D. outside the presence of the jury regarding the letters. During that testimony, B. D. explained that "Jermey" was a fictional person and that the letters were written as part of a "wild story line" she had been working on. In light of that testimony, the trial court did not err in refusing to admit the letters based on their lack of relevance.

Furthermore, we find no merit to Dailey's argument that the trial court was required by the "best evidence rule" to admit the letters. That rule requires a party seeking to prove the contents of a writing either to produce the document itself or to explain its absence. See OCGA § 24-5-4. Dailey's theory is apparently that because B. D. testified that she had experienced suicidal thoughts, the State was required to introduce her letters into evidence to prove that fact. Given that B. D. was competent to testify as to her own state of mind, however, this theory is insupportable as a matter of both law and logic.

(d) Dailey also asserts that the trial court erred in refusing to allow him to testify as to the fact that he suffered from genital herpes. Again, we disagree.

Dailey sought to testify at trial that he wore a condom when he had intercourse because he had been diagnosed with genital herpes. His only evidence of the diagnosis was the fact that he had "been told" by a doctor that he suffered from the disease. The trial court ruled that Dailey could not testify to a medical diagnosis based on hearsay. The trial court also explained, however, that Dailey could testify as to his symptoms and the fact that he wore a condom because of those symptoms. We find no error in this ruling. See *Eberhart v. Morris Brown College*, 181 Ga. App. 516, 518 (352 SE2d 832) (1987) ("The diagnosis and potential continuance of a disease are medical questions to be established by physicians as expert witnesses and not by lay persons.") (citation and punctuation omitted).

(e) Prior to Dailey's testimony at trial, the State filed a motion in limine to bar him from offering testimony theorizing that B. D. could have obtained the semen found on her clothes by retrieving a condom used by Dailey on the morning of the alleged rape and thereafter discarded in a trash can at the family residence. The trial court granted that motion, finding that any such theory was too speculative. In response to that ruling, Dailey's trial counsel indicated that he, in fact, did not oppose that part of the State's motion in limine, telling the court that he never intended to introduce such testimony. Taken together with the fact that trial counsel offered no opposition to this part of the State's motion, these statements prevent Dailey from challenging this ruling on appeal. See, e.g., *Dept. of Human Resources v. Phillips*, 268 Ga. 316, 320 (2) (486 SE2d 851) (1997)

(party waives right to challenge on appeal a "ruling that [his] own procedure or conduct procured or aided in causing").

2. Dailey also claims that his trial counsel was ineffective in (i) failing to obtain admissible evidence of his genital herpes; (ii) failing to raise the issue of estoppel to prevent the State from objecting to the admission of the GBI polygraph; (iii) failing to prepare adequately for trial; (iv) failing to seek an independent examination of the DNA evidence presented at trial by the State; and (v) failing to call a specific witness. We find no merit to any of these assertions.

"To prevail on a claim of ineffective assistance of trial counsel, [a defendant] bears the burden of showing both that trial counsel was deficient and that he was prejudiced by the deficiency." *Welbon v. State*, 278 Ga. 312, 313 (2) (602 SE2d 610) (2004). Prejudice is shown by demonstrating "that a reasonable probability exists that the outcome of the case would have been different but for the deficient performance of counsel." *Allen v. State*, 277 Ga. 502, 503 (3) (591 SE2d 784) (2004). Dailey cannot meet this burden.

(a) Assuming arguendo that trial counsel's failure to obtain admissible evidence of Dailey's genital herpes constituted ineffective assistance, we fail to see how it prejudiced him. Dailey sought to introduce evidence of his herpes diagnosis to support his claim that he always wore a condom when having intercourse. Although the trial court would not permit Dailey to testify as to any diagnosis of herpes, it did allow him to testify as to his symptoms and the fact that his condom use resulted from those symptoms.

(b) Dailey also claims that trial counsel should have argued that the State was estopped from challenging the admissibility of the GBI polygraph, because the memo from the investigator for the district attorney's office referred to the polygraph as "stipulated." Dailey, however, offers no legal authority to support the assertion that the doctrine of estoppel could apply in this context and, if it did, why Dailey would have prevailed on the question.

In that regard, we note that a central element of estoppel is detrimental reliance by the party invoking the doctrine on the conduct of the party sought to be estopped. See, e.g., *Mitchell v. Ga. Dept. of Community Health*, 281 Ga. App. 174, 179-180 (635 SE2d 798) (2006). In light of counsel's testimony that the State had refused to stipulate to the test's admissibility, that he had communicated that fact to Dailey, and that he proceeded with the test in the hopes of using it to convince the State to drop the charges or negotiate a plea, Dailey would have been unable to prove such detrimental reliance.

(c) Nor do we find any merit to Dailey's contention that his trial counsel was unprepared for trial. The only factual assertion Dailey makes in support of this claim is that trial counsel moved unsuccessfully for a continuance shortly before trial. At the *motion for new trial*

hearing, however, trial counsel testified that he had sought the continuance to obtain all of B. D.'s writings, apparently thinking that some of those documents might constitute relevant evidence. The trial court delayed the pretrial motions hearings to give trial counsel an opportunity to obtain and review those documents, and trial counsel did so. Thereafter trial counsel argued his motion claiming that the documents, or parts of them, should be admitted into evidence, and the trial court denied the same. These facts do not support the conclusion that trial counsel was unprepared for trial. See *English v. State*, 260 Ga. App. 620, 625 (4) (a) (580 SE2d 351) (2003).

(d) We further find that trial counsel's failure to obtain an independent analysis of the DNA evidence neither rendered him ineffective nor prejudiced Dailey. Dailey never contended that the fluid samples recovered from his daughter's clothing and body were not his. Rather, as noted supra, his theory of defense included the proposition that B. D. obtained her father's semen from a condom he had previously used and discarded. In light of that fact, Dailey cannot demonstrate that this decision on the part of trial counsel represented anything other than sound trial strategy and, as such, it cannot give rise to an ineffective assistance claim. See *Daugherty v. State*, 283 Ga. App. 664, 670 (5) (a) (642 SE2d 345) (2007).

(e) Finally, Dailey has failed to demonstrate ineffective assistance resulting from trial counsel's failure to call as a witness the owners of a home where Dailey and his daughter allegedly worked on the day of the rape. Dailey argues that this witness could have testified as to B. D.'s demeanor immediately following the incident. Dailey, however, fails to explain what that testimony would have shown with respect to B. D.'s demeanor, or how such testimony would have helped his case. Thus, Dailey has not demonstrated any basis for concluding that trial counsel's failure to call this alleged witness was error, or that it affected the outcome of his trial.

For the reasons set forth above, the trial court's denial of Dailey's motion for a new trial is affirmed.

*Judgment affirmed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED OCTOBER 1, 2007

*Edwin M. Saginar*, for appellant.

*Garry T. Moss, District Attorney, Wallace W. Rogers, Jr., Assistant District Attorney*, for appellee.