A10A0752. MANTOOTH v. THE STATE.
(693 SE2d 587)

BLACKBURN, Presiding Judge.

Following a bench trial, Mark Mantooth was convicted of three counts of family violence/simple battery;[1] two counts each of family violence/battery,[2] family violence/terroristic threats,[3] and cruelty to children in the first degree;[4] and a single count each of aggravated stalking,[5] family violence/false imprisonment,[6] cruelty to children in the third degree,[7] interference with government property,[8] and giving a false date of birth.[9] Mantooth now appeals from the denial of his motion for a new trial, asserting: (1) that he received ineffective assistance of trial counsel; and (2) that the trial court violated his due process rights by holding the hearing on his new trial motion without him present. Discerning no error, we affirm.

"On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence." (Punctuation omitted.) *Rogers v. State*.[10] So viewed, the evidence shows that Mantooth's convictions arose out of a series of incidents that

---

[1] OCGA § 16-5-23 (f).

[2] OCGA § 16-5-23.1 (f).

[3] OCGA § 16-11-37 (a), (d).

[4] OCGA § 16-5-70 (b).

[5] OCGA § 16-5-91 (a).

[6] OCGA § 16-5-41 (a).

[7] OCGA § 16-5-70 (d) (2).

[8] OCGA § 16-7-24 (a).

[9] OCGA § 16-10-25.

[10] *Rogers v. State*, 285 Ga. App. 568 (646 SE2d 751) (2007).

occurred between November 13, 2007 and February 5, 2008. On November 13, 2007, Mantooth and his girlfriend, Kimberly Riccitelli, got into an argument while driving from the Dawsonville area to Riccitelli's home in Waleska. Riccitelli eventually escaped from Mantooth's truck and made it into a nearby fast-food restaurant, where she called a friend to come pick her up. Fearing that Mantooth would return to her house and harm her two daughters, Riccitelli also called her neighbors, Fred and Rita Moon, and asked them to keep the girls at their house. Riccitelli's friend then drove her home, and Mantooth arrived a short time later.

The couple continued to argue and during their argument Mantooth battered Riccitelli by repeatedly poking her leg. Hearing the argument, Mr. Moon called Riccitelli, who explained that Mantooth had her "cornered" in the kitchen of the house and indicated that she wanted the Moons to call police. Mrs. Moon then called 911 from her cell phone while Mr. Moon stayed on the line with Riccitelli. During that time, Mr. Moon heard Mantooth threatening to burn Riccitelli's house, a fact which Mrs. Moon relayed to the 911 operator. A tape of Mrs. Moon's 911 call was played at trial.

Mantooth left Riccitelli's house before police arrived; officers arrested him later that night, however, after Mrs. Moon called 911 to report that Mantooth was calling Riccitelli from his cell phone, telling her he was nearby, and describing the activity he was seeing at Riccitelli's house. Police thereafter located an intoxicated Mantooth in a wooded area behind his girlfriend's home. After Mantooth's arrest, police placed him, handcuffed, in the back of a patrol car, where he proceeded to kick out one of the rear passenger windows.

Mantooth bonded out of jail, with a special condition of his bond being that he have no contact with Riccitelli. He violated that condition immediately, calling Riccitelli the day of his release and pressuring her to recant her statements to police. Such a recantation was extremely important to Mantooth, because at the time he was serving a probated sentence in Cobb County for aggravated stalking of his ex-wife. Thus, the charges resulting from his abuse of Riccitelli violated the terms of his probation.

On December 12, 2007, following a routine traffic stop, Mantooth was arrested and jailed for violation of his Cobb County probation. Between December 12, 2007 and January 3, 2008, Mantooth made over 700 calls from the Cobb County jail to Riccitelli's home and cell phones. Those calls were recorded and were introduced into evidence at trial, with several of them being played for the trial court. During those calls, Mantooth told Riccitelli that it was her fault he was in jail, ordered her to retain an attorney to obtain his release, and made intimidating and threatening statements to

her. Pursuant to Mantooth's demands, Riccitelli did obtain an attorney for him, and he was released from the Cobb County jail on January 3, 2008. He then moved back into Riccitelli's house.

On January 11, 2008, while the couple was having another argument, Mantooth again battered Riccitelli by throwing a bar stool at her which hit her leg, causing a severe contusion. On January 23, 2008, Mantooth battered Riccitelli a third time, kicking her in the ribs and puncturing her lung. While Riccitelli was in bed recovering from that injury, Mantooth came in and sat on top of her, pinning her arms above her head and refusing to allow her to move. Having immobilized Riccitelli, Mantooth proceeded to slap her face and dropped a clock on her head. These events all occurred in the presence of Riccitelli's two daughters and, when the older daughter attempted to come to her mother's aid, Mantooth threw her off the bed and into a wall, causing the child to break her wrist.

On other occasions, Mantooth battered Riccitelli's younger daughter by hitting her on the arms with a belt, pushing her, knocking a bowl of soup out of her hands while she was eating it (thereby causing a cut to the child's mouth), and by throwing a heavy container toward her, which ricocheted off the wall and hit the girl in the head, causing a large bump.

The couple's last altercation occurred on February 5, 2008, when they got into an argument which resulted in Mantooth pushing Riccitelli, destroying personal property inside her house, throwing lit cigarettes at Riccitelli's older daughter, lighting napkins and throwing them on the home's floors, and threatening to kill Riccitelli and burn her house down. Riccitelli's older daughter ran to the neighbor's house and called police.[11] Mantooth again left the scene before police arrived, but police located and arrested him later that night.[12]

Following his indictment, Mantooth filed a written waiver of his right to a jury trial, and he was given a bench trial in December 2008. The trial court found him guilty of all but one count of the indictment,[13] and he thereafter filed a motion for a new trial, asserting that he had received ineffective assistance of counsel. Mantooth's new counsel filed a motion to produce Mantooth for the hearing on his new trial motion, asserting that Mantooth's testimony was "essential for the court to determine the issue of trial counsel's ineffectiveness," including the issue of whether trial counsel properly advised Mantooth to waive his right to a jury trial and

---

[11] The evidence showed that the child had to go to the neighbor's house to call for emergency assistance because Mantooth had broken Riccitelli's cell phone and the daughter's cell phone and had disabled the phone that was in the house.

[12] When questioned by police that night, Mantooth twice gave them a false date of birth.

[13] Mantooth was acquitted of the charge of driving without insurance.

whether trial counsel "adequately prepared and presented a vigorous defense."

The trial court did not grant that motion, and Mantooth was not present at the new trial hearing. At that hearing, when Mantooth's attorney renewed the motion to produce, the trial court stated:

> [W]e've talked about this on the phone two or three times and I've repeatedly said if you make me an offer of proof or tell me what it is you need his testimony for then I would have him brought forward, but, again, today in your opening statement you've not told me. It's just a general statement of needing his testimony.

Counsel then proceeded to present his evidence on the new trial motion, but never made a proffer showing what facts Mantooth would testify to and how those facts would support his claim of ineffective assistance of counsel. At the end of the hearing, Mantooth's attorney was again specifically given the opportunity to make the necessary proffer, but declined to do so. Nor did Mantooth's attorney make such a proffer within a certain number of days after the hearing, despite being given leave by the trial court to do so.

During his testimony at the new trial hearing, Mantooth's trial counsel explained that Mantooth had made a knowing and voluntary waiver of his right to a jury trial. He also stated that, as a matter of strategy, he thought it was better for Mantooth to be tried by a judge, rather than a jury. This was because, in trial counsel's experience, defendants in domestic violence cases in general, and particularly in those involving children, did not fare well in front of a jury. Trial counsel further testified as to his belief that Mantooth's "abrasive personality" would not have been well received by jurors. To support this opinion, trial counsel pointed to the fact that, after the grand jury hearing that resulted in Mantooth's indictment, one of the grand jurors told the prosecutor that she should not cut any deal with Mantooth; rather the grand juror felt that Mantooth should be sentenced by a judge.

Trial counsel further testified that Mantooth freely admitted to some of the crimes with which he was charged, a fact evidenced by Mantooth's own testimony at trial. Thus, as a matter of strategy, trial counsel focused on defending those charges which Mantooth did not admit, charges which included the most serious offenses.

The trial court denied Mantooth's new trial motion, and Mantooth now appeals from that order.

1. Mantooth first asserts that his trial counsel was ineffective in: (a) advising him to waive his right to a jury trial; and (b) failing to

mount a vigorous defense to all charges. We find no merit in either of these assertions.

> To prevail on a claim of ineffective assistance, appellant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. Appellant must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct. In reviewing a lower court's determination of a claim of ineffective assistance of counsel, an appellate court gives deference to the lower court's factual findings, which are upheld unless clearly erroneous; the lower court's legal conclusions are reviewed de novo. Further, appellate courts are generally reluctant to reverse a case on the ground of ineffective assistance when the complaint urged can reasonably be construed as involving defense counsel's trial strategy.

(Citations and punctuation omitted.) *Farris v. State*.[14]

(a) Mantooth does not assert that his waiver of his right to a jury trial was invalid, and he thereby implicitly concedes that he made such waiver voluntarily, knowingly and intelligently. See, e.g., *Barr v. State*[15] (to be valid, a defendant's waiver of his right to a jury trial must be voluntary, knowing, and intelligent). Mantooth's argument, therefore, is that counsel's strategic advice that he forego a jury trial was, in hindsight, unwise. This Court has previously held, however, that counsel's reasoned advice that a bench trial would be preferable to a jury trial falls "within the wide range of reasonable professional assistance" expected of defense counsel. *Marshall v. State*.[16] Thus, such advice will not give rise to a claim of ineffective assistance absent some evidence that, but for that advice, the defendant would have insisted on a bench trial. Id. Here, Mantooth failed to put forth any such evidence.

Moreover,

> [a]t the motion for new trial hearing, [Mantooth's] trial counsel testified that he had discussed the advantages and disadvantages of waiving a jury trial in favor of a bench trial with [Mantooth]; that he had discussed the potential for

---

[14] *Farris v. State*, 293 Ga. App. 674, 675 (667 SE2d 676) (2008).
[15] *Barr v. State*, 302 Ga. App. 60, 62 (2) (690 SE2d 643) (2010).
[16] *Marshall v. State*, 253 Ga. App. 645, 646 (560 SE2d 118) (2002).

juror bias in a family violence case such as [Mantooth's]; and that he filed [Mantooth's] waiver of jury trial form with [Mantooth's] understanding and consent. Under these circumstances, the trial court did not err in concluding that [Mantooth] failed to carry his burden of showing that his counsel's performance was deficient for advising him to pursue a bench trial rather than a jury trial.

*Wroge v. State.*[17] See also *Bazin v. State;*[18] *Jacobs v. State.*[19]

Finally, "[g]iven the strength of the evidence against [Mantooth], we conclude that he has failed to demonstrate a reasonable probability that the outcome of the trial would have been different if tried before a jury." *Hendrix v. State.*[20] Accordingly, Mantooth also failed to prove the prejudice prong as to this claim of ineffective assistance. Id. See also *Thomas v. State.*[21]

(b) With respect to his claim that trial counsel was ineffective for failing to vigorously defend all charges against him, Mantooth does not identify which charges he believes that trial counsel failed to defend adequately, or what available evidence trial counsel failed to present in Mantooth's defense.[22] Moreover, this argument ignores Mantooth's own trial testimony, during which he admitted much of the conduct underlying the charges against him. Specifically, Mantooth did not deny threatening to burn down Riccitelli's house; he admitted to poking Riccitelli's leg (the conduct underlying the first charge of family violence/simple battery); he admitted kicking out the rear window of the patrol car; he admitted throwing a wooden stool in Riccitelli's presence (but denied throwing it at Riccitelli or hitting her with the same); he admitted the conduct constituting false imprisonment (but insisted that he and Riccitelli were "playing"); he admitted pushing Riccitelli's older daughter off the bed (but claimed it happened when they were playing tug-of-war and that the resulting injury was an accident); he admitted knocking a soup bowl out of the younger daughter's hands as she was eating; and he admitted to throwing the container that ricocheted off the

---

[17] *Wroge v. State*, 278 Ga. App. 753, 755 (2) (629 SE2d 596) (2006).

[18] *Bazin v. State*, 299 Ga. App. 875, 877 (1) (683 SE2d 917) (2009).

[19] *Jacobs v. State*, 299 Ga. App. 368, 372 (2) (a) (683 SE2d 64) (2009).

[20] *Hendrix v. State*, 284 Ga. 420, 422 (2) (667 SE2d 597) (2008).

[21] *Thomas v. State*, 297 Ga. App. 416, 418-419 (1) (677 SE2d 433) (2009).

[22] We note that Mantooth's brief is a mere five pages long and, with respect to this claim of error, it contains no record cites or citations to legal authority. "We caution counsel that this Court's rules are designed to facilitate the consideration of enumerated errors and compliance with such rules is not optional. [Mantooth's] failure to adhere to our rules has hampered our ability to" address his claims of error. (Punctuation omitted.) *Bazin*, supra, 299 Ga. App. at 876.

wall and hit the younger daughter in the head.

At the motion for new trial hearing, trial counsel testified that in light of Mantooth's admissions as to this conduct, he decided to focus on defending against the more serious charges. This decision was obviously strategic in nature and, as such, it was within "the exclusive province of counsel after consultation with the client." (Punctuation omitted.) *Abernathy v. State*.[23] Such a strategic decision can provide "no grounds for reversal unless [it was] so patently unreasonable that no competent attorney would have chosen [it]." (Punctuation omitted.) *Biggins v. State*.[24] Given the circumstances of this case, including Mantooth's admissions, we find that trial counsel's strategic decision to focus his defense on the most serious offenses with which Mantooth was charged "was eminently reasonable." Id. (finding that "trial counsel's strategic decision to basically admit the conduct underlying the allegations against [the defendant], and to argue that [defendant's] actions amounted at most to the lesser included offenses" did not constitute ineffective assistance). See also *Davis v. State*[25] (in light of evidence, including eyewitness testimony concerning accident, defense counsel's strategic decision not to contest cause of accident, but base defense on argument that defendant was not driving, did not constitute ineffective assistance).

2. Nor do we find any merit in Mantooth's claim that the trial court violated his due process rights by conducting the motion for new trial hearing without him present. "In Georgia, the constitutional right of one accused of a felony to be present during the course of his trial does not extend to post-verdict procedures such as a motion for new trial." *Florescu v. State*.[26] Rather, due process affords him the right to be present at such a hearing only "if his presence would contribute to the fairness of the procedure." (Punctuation omitted.) *Wallace v. State*.[27] Where the defendant's testimony would do nothing to support his claims of error, then due process does not require his presence. Id.

In this case, the trial court asked Mantooth's counsel multiple times to make a proffer showing why Mantooth's testimony was necessary — i.e., to state what facts Mantooth would testify to and how such testimony would support his claims of error. Moreover, in denying the motion to produce Mantooth for the hearing, the trial court gave Mantooth's attorney leave to make a more specific offer of

[23] *Abernathy v. State*, 278 Ga. App. 574, 586 (3) (b) (630 SE2d 421) (2006).
[24] *Biggins v. State*, 299 Ga. App. 554, 557 (2) (683 SE2d 96) (2009).
[25] *Davis v. State*, 293 Ga. App. 799, 802 (3) (668 SE2d 290) (2008).
[26] *Florescu v. State*, 276 Ga. App. 264, 267 (1) (c) (623 SE2d 147) (2005).
[27] *Wallace v. State*, 294 Ga. App. 159, 161 (2) (669 SE2d 400) (2008).

proof within a certain number of days after the hearing. Given counsel's repeated failure to make the requested proffer, Mantooth cannot claim that the trial court violated his due process rights by hearing the new trial motion without him present. *Wallace*, supra, 294 Ga. App. at 161 (2). See also *Dailey v. State*[28] (a "party waives [his] right to challenge on appeal a ruling that his own procedure or conduct procured or aided in causing") (punctuation omitted).

For the reasons set forth above, we affirm the trial court's order denying Mantooth's motion for a new trial.

*Judgment affirmed. Barnes and Bernes, JJ., concur.*

DECIDED APRIL 1, 2010.

*Patrick G. Longhi*, for appellant.
*Garry T. Moss*, District Attorney, *J. Clifford Head, Lara A. Snow*, Assistant District Attorneys, for appellee.

---

[28] *Dailey v. State*, 287 Ga. App. 706, 710 (1) (e) (652 SE2d 599) (2007).
[1] *Davis v. State*, 302 Ga. App. 144, 144-145 (690 SE2d 464) (2010).