**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 13, 2013**

# In the Court of Appeals of Georgia

A12A1820. NORTON v. THE STATE.

BRANCH, Judge.

Frank Edwin Norton was tried by a Cherokee County jury and convicted of trafficking in methamphetamine,[1] possession of methamphetamine both on his person and in his urine,[2] and possession of a drug related object.[3] He now appeals from the denial of his motion for a new trial, asserting that the trial court erred in admitting similar transaction evidence obtained during an illegal search of his person and during a police interview conducted in violation of his *Miranda* rights. Norton further

---

[1] OCGA § 16-13-31 (e).

[2] OCGA § 16-13-30 (a).

[3] OCGA § 16-13-32.2.

contends that he received ineffective assistance of trial counsel. We find no error and affirm.

On appeal from a criminal conviction, the defendant is no longer entitled to a presumption of innocence and we therefore construe the evidence in the light most favorable to the jury's guilty verdict. *Martinez v. State*, 306 Ga. App. 512, 514 (702 SE2d 747) (2010). So viewed, the record shows that in May 2009, Norton was brought into the emergency room of a local hospital in a semi-conscious state. Emergency room personnel followed the hospital's standard procedure for cases such as Norton's, which included undressing the patient, searching his clothing for property, and inventorying any property found.[4] When hospital employees followed this protocol with respect to Norton, they discovered a pipe used for smoking methamphetamine, a small bag containing 1.03 grams of methamphetamine, and a larger bag containing 47.6 grams of methamphetamine. Hospital personnel then contacted law enforcement, and Michael Parker, a narcotics agent with the Cherokee County Sheriff's office, responded to the scene.

---

[4] According to the emergency room nurse who testified at trial, patients such as Norton were undressed to facilitate both a physical exam and the performance of certain medical tests. A patient's clothing was searched in an attempt to find information or items that could help to explain the patient's condition, and also to prevent contraband from entering the hospital.

At the hospital, Parker interviewed Norton's girlfriend, who stated that Norton used methamphetamine and that he ingested the drug by smoking it in a pipe. Based on this information, and given the items found on Norton's person, Parker obtained a search warrant for Norton's blood and urine. Tests run on Norton's urine were positive for methamphetamine. Following his release from the hospital, Norton was arrested and charged with the crimes at issue.

During trial, the State was allowed to introduce similar transaction evidence involving charges against Norton resulting from an earlier, April 2009 execution of a search warrant at his girlfriend's home. When police went to the residence to execute the warrant, they knocked on the front door and Norton answered. After the lead officer, Agent Mayfield, identified himself as law enforcement and presented Norton with the search warrant, Norton responded by attempting to close the door. Mayfield stuck his foot in the door to prevent its closing and asked Norton, who appeared to be deliberately concealing the left side of his body, to show his hands. Norton refused, so Mayfield drew his weapon, ordered Norton to back away from the door, and he and the other officers present forced their way into the home. Once the officers entered the house, Deputy Pope "took control of" Norton. Pope testified that she ordered Norton several times to show his hands, but that he ignored these orders

and kept moving his hands "like he was going for his pockets." She therefore handcuffed Norton and performed a pat down of his person because she believed he was attempting either to access a weapon or to access and destroy evidence. As a result of the pat down, Pope discovered a methamphetamine pipe in Norton's back left pocket. Norton was subsequently interviewed at the scene by Agent Mayfield. During that interview, Norton admitted he used methamphetamine and agreed to provide officers with a urine sample, which tested positive for methamphetamine.

Following his conviction on the charges arising from his May 2009 arrest, Norton filed a motion for a new trial, which was denied. This appeal followed.

1. Norton contends that the trial court erred in denying his pre-trial motion to exclude the similar transaction evidence. We disagree.

Norton's motion to exclude this evidence was based on a defect in the search warrant, which Norton alleges rendered the search of his girlfriend's home, and the resulting search and seizure of Norton, illegal.[5] At the hearing on his motion, Norton

[5] The State argued that because Norton neither resided in nor had an ownership interest in his girlfriend's residence, he lacked standing to challenge the validity of the search warrant. The trial court acknowledged this argument, but also found that Norton had standing to challenge the search and seizure of his person that resulted from the allegedly valid warrant. In addressing the validity of the warrant we assume, without deciding, that Norton has standing to challenge the same.

introduced evidence showing that the application for the warrant specified that law enforcement was looking for, among other things, methamphetamine. The warrant itself, however, authorized a search for marijuana, rather than methamphetamine. Norton claims that this defect in the warrant rendered it invalid and the execution of it illegal. We disagree.

Under Georgia law, "[n]o search warrant shall be quashed or evidence suppressed because of a technical irregularity not affecting the substantial rights of the accused." OCGA § 17-5-31. The only evidence as to the discrepancy between the warrant application and the warrant itself came from Agent Mayfield, who prepared both documents. Mayfield explained that this discrepancy resulted from a typographical error on his part. Mayfield also testified that he knew the purpose of the warrant was to search for methamphetamine and related materials, as opposed to marijuana, and that the officers executing the warrant went to the premises looking specifically for methamphetamine.

The trial court obviously found this testimony credible and as a reviewing court we must accept that determination, absent any showing that it was clearly erroneous. *Carlton v. State*, 251 Ga. App. 339, 340 (1) (554 SE2d 318) (2001). No such showing has been made, and the evidence of record supports the trial court's conclusion that

5

the single-word discrepancy between the warrant application and the warrant itself resulted from a typographical error and was "not so material as to destroy the integrity of the [application] or the validity of the warrant." (Punctuation and footnote omitted.) *Carson v. State*, 314 Ga. App. 515, 516 (1) (a) (724 SE2d 821) (2012) (warrant not invalid where affidavit in support thereof identified someone other than defendant as the suspected shooter; the error was typographical, occurred only once in the six-page affidavit, and the remainder of the affidavit correctly identified defendant as the suspected shooter). See also *Lester v. State*, 278 Ga. App. 247, 250 (1) (628 SE2d 674) (2006) (typographical error in officer's warrant affidavit which resulted in the wrong address being given for the premises to be searched did not invalidate warrant; "other elements of description [were] sufficiently particular to identify the premises to be searched") (citation omitted).

2. During trial, Norton again attempted to exclude evidence concerning the statements he made to police following their search of his girlfriend's house, arguing that the interview at which he made these statements violated his *Miranda* rights. The trial court held a *Jackson-Denno* hearing on this motion, at which time an audio recording of Norton's interview was played for the judge. The recording reflects that at the beginning of the interview, Mayfield read Norton the waiver of rights form,

6

which included a recitation of each of Norton's *Miranda* rights.[6] After reading Norton each of his rights, Mayfield paused and asked Norton if he understood that right, and each time Norton responded affirmatively. The officer then asked Norton to read the last paragraph of the form aloud, and Norton did so, stating:

> I understand my rights. Having these rights in mind, I am willing now to talk about matters which I have knowledge of which relate to possible violations of Georgia law. I discuss these matters freely. I have not been threatened. I have not been promised anything. I have not been forced in any way to answer any questions or make any statements.

Mayfield then asked Norton if he understood the form, and Norton responded, "Yes, I think it gives me the right not to say anything if I don't want to." The officer indicated that Norton's understanding was correct, and then asked Norton to sign the waiver form. Before he signed, however, Norton stated, "the part [of the form] that bothers me is it says 'I am now willing to talk' . . . that don't [sic] disavow everything else I said [does it]?" Mayfield responded that the sentence did not mean that Norton

---

[6] This part of the form stated that Norton had been informed that he had the right to remain silent; that anything he said could be used against him in court; that he had a right to talk to a lawyer and have the lawyer present during questioning; that if he could not afford a lawyer but wanted one, an attorney could be appointed to represent him before police questioned him; and that he could decide at any time to exercise these rights and quit answering questions.

was refuting anything else he had said. The officer also told Norton that if he did not feel comfortable discussing any of the agent's questions, he should just refuse to answer rather than lie to law enforcement. Norton executed the waiver form and the interview proceeded.

Norton's motion to suppress was based on his question to Agent Mayfield as to whether the statement on the waiver of rights form, that he was "now willing" to speak with law enforcement meant he was refuting anything he had "said before." Specifically, Norton contends that this question shows that he had previously spoken with an officer and had indicated that he did not want to speak with police. By questioning him a second time, therefore, police violated his *Miranda* rights and the trial court erred in admitting the evidence obtained during that interview. We find no such error.

The question as to whether a defendant's custodial statement is admissible requires the trial court to examine the totality of the circumstances and determine whether the State has shown, by a preponderance of the evidence, that the statement was voluntary. *Clark v. State*, 309 Ga. App. 749, 751 (3) (711 SE2d 339) (2011). In other words, the statement will be admissible only if it was made following the defendant's knowing and voluntary waiver of his *Miranda* rights. *Salinas-Gomez v.*

8

*State*, 287 Ga. App. 384, 386 (1) (651 SE2d 501) (2007). Additionally, once a suspect is in custody, if he indicates to the police "in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." (Punctuation and footnote omitted.) *Screws v. State*, 245 Ga. App. 664, 665 (2) (538 SE2d 547) (2000). Any assertion of the right to remain silent, however, must be clear and unequivocal. "[I]f a defendant equivocates in asserting the right, a police officer is under no obligation to clarify [the defendant's wishes] or to stop questioning." (Citation omitted.) *Ridley v. State*, 290 Ga. 798, 802 (4) (725 SE2d 223) (2012). "The obligation to cease [or refrain from] questioning a suspect arises only when the suspect unambiguously invokes the right to remain silent." (Citation omitted.) *Perez v. State*, 283 Ga. 196, 201 (657 SE2d 846) (2008).

The record in this case shows that Norton understood his *Miranda* rights, including his right to remain silent. Indeed, Norton himself stated to police that he understood the waiver of rights form as giving him "the right not to say anything if I don't want to." Moreover, the record contains no evidence that Norton ever asserted his right to remain silent, either equivocally or otherwise. Deputy Pope testified at the pre-trial evidentiary hearing that she neither interviewed nor attempted to interview Norton after handcuffing and frisking him at the scene. The only witness who testified

9

at the *Jackson-Denno* hearing, Agent Mayfield, stated that he did not attempt to speak with Norton before the recorded interview – i.e., before advising him of his rights and obtaining a waiver of the same. And when asked if Norton could have told some other officer at the scene that he did not wish to speak with law enforcement, Mayfield stated that any such information would have been provided to him as a matter of protocol, given that he was the case agent. Furthermore, Norton did not testify at either the pre-trial hearing or the *Jackson-Denno* hearing and assert that he informed any law enforcement officer present at the execution of the search warrant that he intended to remain silent. See *Perez*, supra, 283 Ga. at 201. Nor did he call any other officer present at the scene to testify that Norton had spoken with the officer and indicated his wish not to speak with police.

The trial court's ruling on this issue shows that it credited the testimony of the officers, and reached the factual conclusion that Norton never informed anyone at the scene that he wished to remain silent. "We are obligated to accept these factual and credibility determinations unless they are clearly erroneous," *Huskins v. State*, 294 Ga. App. 653, 655 (2) (a) (669 SE2d 680) (2008) (citation omitted), and we can discern no such error here. Accordingly, we affirm the trial court's finding that Norton's custodial statement was made following a knowing and voluntary waiver of his rights.

10

3. Norton also contends that he received ineffective assistance of counsel. To prevail on a claim of ineffective assistance, Norton bears the burden of proving both that the performance of his lawyer was deficient and that he suffered prejudice as a result of this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984). If Norton cannot meet his burden of proving either prong of the *Strickland* test, then we need not examine the other prong. *Battles v. State*, 290 Ga. 226, 229 (2) (719 SE2d 423) (2011). Here, we find that Norton failed to establish that his lawyer's performance was deficient.

In his brief, Norton raises several grounds for his ineffective assistance claim. Only one of these grounds, however, was raised and argued below.[7] Where specific grounds for an ineffective assistance claim are not raised and ruled on in the trial court, they are waived and cannot be considered on appeal. *Bell v. State*, 306 Ga. App. 853, 860 (3) (703 SE2d 680) (2010) ("Such claims unasserted at the trial level are

[7] The transcript of the hearing on Norton's new trial motion reflects that his current lawyer questioned Norton's trial counsel about his defense strategy and what he did in investigating and preparing Norton's defense. Following this testimony, when asked by the court below to identify the exact grounds on which he was basing his ineffective assistance claim, Norton's current lawyer responded: "Your Honor, we'll leave it for the court. I mean, we had a thorough and sifting examination [regarding] exactly what [trial counsel] did in his performance. . . . So we'll submit it to the court, except we do think what's glaring here is that three out of four charges were not being contested."

procedurally barred, and once a claim is procedurally barred, there is nothing for this Court to review.") (citation, punctuation and footnote omitted).

The sole ground for his ineffective assistance claim argued by Norton below was that trial counsel failed to defend the charges of possession of methamphetamine and possession of a drug related object and instead focused on defending the trafficking charge. As trial counsel explained at the motion for new trial hearing, however, this decision was a strategic one, based on the fact that the evidence on the possession charges was substantial. Thus, he decided that the best line of defense was to argue that Norton was, at worst, a casual user of methamphetamine, and that he was not a drug trafficker. And because the large bag of methamphetamine was found on Norton while he was semi-conscious, trial counsel attempted to show that the drugs had been planted on him by a third-party.

Given the strategic nature of this decision, it "can provide no grounds for reversal unless it was so patently unreasonable that no competent attorney would have chosen it." (Citation, punctuation and footnote omitted.) *Mantooth v. State*, 303 Ga. App. 330, 336 (1) (b) (693 SE2d 587) (2010). And it is Norton who bears the burden of rebutting the strong presumption that this strategy was a reasonable one, made in

the exercise of reasonable professional judgment. *Thornton v. State*, 301 Ga. App. 784, 793 (4) (689 SE2d 361) (2009). Norton cannot carry this burden.

Notably, Norton fails to identify what evidence or arguments trial counsel should have presented in defense of the possession charges. See *Greene v. State*, 295 Ga. App. 803, 806 (1) (673 SE2d 292) (2009) ("It is axiomatic that trial counsel cannot be deemed ineffective for failing to introduce nonexistent evidence.") Moreover, Norton's argument fails to acknowledge the significant physical evidence against him with respect to the charge of possession of methamphetamine in his urine – i.e., that his urine tested positive for the drug. Additionally, the evidence that Norton was a regular user of methamphetamine, including the similar transaction evidence and Norton's admission to police, presented significant obstacles to mounting a credible defense to the charges stemming from his possession of the small bag of methamphetamine and the methamphetamine pipe. Under these circumstances, therefore, trial counsel's decision not to contest Norton's guilt on the lesser crimes and focus his defense on the trafficking charge was a reasonable one. See *Mantooth*, 303 Ga. App. at 336 (1) (b) ("trial counsel's strategic decision to focus his defense on the most serious offenses with which [defendant] was charged was eminently reasonable," given the significant evidence against his client) (citation and punctuation omitted);

13

*Paul v. State*, 257 Ga. App. 86 (570 SE2d 399) (2002) ("considering the overwhelming evidence" that defendant had committed the crime at issue, trial counsel acted reasonably in arguing "that the State could prove robbery, but not armed robbery"). "That this strategy was ultimately unsuccessful in securing a defense verdict on all charges does not show that trial counsel's" performance was deficient. *Farris v. State*, 293 Ga. App. 674, 678 (3) (667 SE2d 676) (2008).

*Judgment affirmed. Miller, P. J., and Ray, J., concur.*

14