## A10A2148. BELL v. THE STATE.
(703 SE2d 680)

BLACKBURN, Senior Appellate Judge.

Following a jury trial, Derico Kenneth Bell was convicted of a single count of burglary.[1] He now appeals from the denial of his new trial motion, asserting that the trial court erred in: (1) denying his *Batson*[2] motion challenging the State's use of its peremptory jury strikes; and (2) denying his motion for a directed verdict. Bell also asserts an ineffective assistance of counsel claim, based on trial counsel's failure to object to the admission of evidence regarding the victims' pretrial identification of Bell, which he claims was tainted. Discerning no error, we affirm.

Viewed in the light most favorable to the verdict, *Jackson v. State*,[3] the record shows that on December 23, 2005, two men broke into a house and stole a number of items, including jewelry, a video gaming system, video and computer games, and DVDs. At the time of the burglary, the homeowner's son and grandson, ages eleven and nine, were in the residence. The boys retreated to an upstairs bedroom where, hidden from view, they observed the intruders. When the burglars left the bedroom where the boys were hiding, the older boy telephoned his mother at work. The mother contacted police and then drove immediately to her house. As the mother

---

[1] OCGA § 16-7-1 (a).

[2] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[3] *Jackson v. State*, 301 Ga. App. 863, 863-864 (690 SE2d 195) (2010).

entered through the front of the house, the burglars exited out the back.

The boys gave police a description of the burglars and a short time later a patrol officer noticed Bell and his co-defendant, who matched the description of the perpetrators, walking by a car wash a short distance from the burgled home. At the time the officer first saw the men, Bell's co-defendant was carrying a backpack. When he saw the police, however, the co-defendant walked behind the car wash and returned without the backpack. The patrol officer later recovered the backpack, and it was subsequently identified as having been stolen during the burglary.

Shortly thereafter, police arrested both Bell and his co-defendant. They transported the two men back to the burgled home, where they had them stand in front of the house. The two boys viewed the men through a window, from inside the house. The boys each identified Bell and his co-defendant as the men who had broken into their home. Additionally, the detective in charge of the case took individual pictures of both Bell and his co-defendant on a digital camera. He then showed the pictures to the boys, who again identified the men as the perpetrators. At trial, the older boy once more identified Bell and his co-defendant as the burglars.[4]

When they went to Bell's residence, police discovered a plastic bag on the front porch that contained a number of items stolen during the burglary. They recovered additional items from the back porch of an unoccupied residence located immediately behind the burgled home.

After the jury was selected, defense counsel made a *Batson* motion, based on the fact that eight of the State's nine peremptory strikes were used against black members of the jury pool. In response to that motion, the State gave the reasons for its peremptory strikes. The prosecutor explained that strike one resulted from the fact that the juror did not appear to understand one or more questions the prosecutor asked, and the State was therefore concerned about the juror's ability to understand the evidence. Strike two was based on the fact that the juror worked in the healthcare industry and had a disabled husband. Because the State believed Bell might produce some evidence of his own disabilities, the prosecutor felt this juror might have "some conflicts." The State's third strike was based on the juror's employment as a supervisor at the local Air Force base and because the prosecutor perceived him as being hostile toward the State. With respect to the juror's employment, the prosecutor explained that it was his understanding that the Air

---

[4] The younger boy did not testify at trial.

Force base was a technically-oriented "logistics facility," and as a rule, he tried to exclude technically-oriented people from his juries because they often "try to over think things." The State exercised its fourth and ninth strikes against a white and black juror respectively, because of their youth and lack of "life experience." Strikes five and eight were based on the fact that the prosecutor had a hard time understanding responses given by each of those jurors, and he thought that indicated "either an inability to articulate [their position] or an inability to reason." The State based its sixth strike on the fact that the juror stated she had negative experiences with law enforcement, that she had a close friend or family member who had been prosecuted, and that she had something weighing heavily on her mind that rendered her unable to serve freely as a juror. Finally, the State exercised its seventh strike against a juror who had either been prosecuted himself or had a close family member or close friend who had been prosecuted.

The trial court denied the *Batson* motion, finding that the State had articulated a race-neutral reason for each of its strikes and that Bell had failed to show that those reasons were pretextual.

At the close of the State's evidence, Bell moved for a directed verdict. In support of this motion, Bell argued that the State's case relied too heavily on the victims' pretrial identification of him, which defense counsel claimed was tainted. The trial court denied the motion, finding there was sufficient evidence to send the case to the jury, who could judge the credibility of the victims' identification of Bell.

After his conviction, Bell filed a motion for a new trial. Following a hearing, the trial court entered an order denying that motion. Bell now appeals from that order.

1. We first address Bell's claim that the trial court erred in denying his *Batson* motion. In evaluating a *Batson* challenge to the State's use of its peremptory strikes, a trial court applies a three-part test:

> First, the opponent of a peremptory challenge must make a prima facie showing of racial discrimination. Second, the burden of production then shifts to the proponent of the strike to give a race-neutral reason for the strike. Third, after hearing from the opponent of the strike and considering the totality of the circumstances, the trial court then decides whether the opponent of the strike carried his burden of proving that discriminatory intent in fact motivated the strike.

(Punctuation omitted.) *Duffie v. State.*[5] With respect to the third step, "[t]he opponent of the strikes may carry his burden of persuasion by showing that similarly situated jurors of another race were not struck or that the proponent's race-neutral reason for a strike is so implausible or fantastic that it renders the explanation pretextual." (Punctuation omitted.) *Barnes v. State.*[6]

"In reviewing the trial court's disposition of the motion, we must bear in mind that . . . [t]he trial court's decision rests largely upon assessment of the prosecutor's state of mind and credibility; it therefore lies peculiarly within a trial judge's province." (Punctuation omitted.) *Jackson v. State.*[7] Accordingly, "[t]he trial court's findings as to whether the opponent of the strike has met the burden of persuasion are entitled to great deference and will be affirmed unless clearly erroneous." (Punctuation omitted.) *Rakestrau v. State.*[8]

Here, "the threshold issue of whether [Bell] established a prima facie case of discrimination is moot because the State offered purportedly race-neutral reasons for its strikes and the trial court ruled on the ultimate issue of purposeful discrimination." (Punctuation omitted.) *Duffie*, supra, 301 Ga. App. at 611 (3). Moreover, Bell does not challenge the trial court's finding that the reasons offered by the State for each of its peremptory strikes were, in fact, race-neutral. Thus, the question before us is whether the trial court erred in finding that Bell had failed to carry "his burden of showing the proffered reasons were merely designed to 'cover up' purposeful racial discrimination." (Punctuation omitted.) *Byron v. State.*[9]

Bell offers two arguments in support of his claim that the State's proffered reasons for its peremptory strikes were pretextual. First, Bell makes a "disproportionate impact" argument, asserting that "although the [venire] panel was about equal in terms of race, two-thirds of the actual jury were white." As a threshold matter, we note that even if Bell's assertion regarding the makeup of the venire panel was correct, evidence of disproportionate impact, standing alone, would be insufficient to establish that the State acted with discriminatory intent. *Livingston v. State;*[10] *Duffie*, supra, 301 Ga. App. at 612 (3).

More importantly, however, Bell's argument on this issue misrepresents the facts. As Bell's brief acknowledges, the record shows

---

[5] *Duffie v. State*, 301 Ga. App. 607, 610-611 (3) (688 SE2d 389) (2009).
[6] *Barnes v. State*, 269 Ga. 345, 349 (6) (496 SE2d 674) (1998).
[7] *Jackson v. State*, 220 Ga. App. 98, 98-99 (469 SE2d 264) (1996).
[8] *Rakestrau v. State*, 278 Ga. 872, 874 (3) (608 SE2d 216) (2005).
[9] *Byron v. State*, 229 Ga. App. 795, 798 (5) (495 SE2d 123) (1997).
[10] *Livingston v. State*, 271 Ga. 714, 718 (2) (524 SE2d 222) (1999).

that the venire panel consisted of 44 white members and 21 black members. In other words, the panel was approximately two-thirds white and one-third black. The actual jury was nearly identical in composition, being made up of eight white members, four black members, and one alternate, who was also black. Thus, the State's use of its peremptory strikes did not have a racially-disproportionate impact on the composition of the jury.

Bell next argues that the allegedly race-neutral reasons the State gave for its strikes were obviously pretextual, because they either applied equally to white jurors who were seated or were simply implausible. Specifically, Bell asserts that the State impermissibly exercised its sixth and seventh strikes against black jurors who had a close friend or family member who had been prosecuted, because it did not strike a white juror whose father had been prosecuted by the IRS. Again, however, this argument misrepresents the record. The white juror did not say that his father had been prosecuted; rather, he said that his father "had some problems with the IRS." There is a marked difference between having a dispute with the IRS and being prosecuted for a crime. This difference was "sufficient to differentiate the (seated juror) from the one[s] who [were] struck and to support the trial court's conclusion that (the seated juror was) not so similar to the one[s] who [were] struck that the force of the facially race-neutral explanation[s] was diminished." (Punctuation omitted.) *Bryant v. State*.[11]

Bell also claims that although the State allegedly exercised its ninth peremptory strike based on the juror's youth, it did not strike a white juror of similar age. The trial court, however, rejected this argument, stating "[q]uite frankly, [the white juror] did not strike me as young in the sense of being a member of the same generation as [the black juror]." On appeal, Bell points to no evidence of record that would refute the trial court's conclusion. Moreover, the record shows that the State did strike a white juror, who appeared to be close in age to the black juror, based on his youth.

Bell further argues that the basis for the State's second strike, which was that the juror had a disabled husband, was not credible. Defense counsel argued below that "there [had] been no proffer by [Bell] of any defense of mental incapacity or anything like that in this case." Again, however, this assertion is refuted by the record, which shows that following a motion by Bell's trial counsel, the trial court ordered Bell to undergo a psychiatric evaluation. Although the results of that evaluation are not in the record, Bell was originally found incompetent to stand trial and ordered to undergo treatment

---

[11] *Bryant v. State*, 304 Ga. App. 456, 464-465 (6) (696 SE2d 439) (2010).

at a mental health facility. Additionally, Bell's counsel filed a pretrial notice of intent to raise the issue of insanity, mental incompetence, or mental retardation. This evidence was sufficient to support the trial court's conclusion that the reason given for the State's second strike was not pretextual.

Bell also takes issue with the reason proffered for the State's third strike, of the juror who worked as a supervisor at the local Air Force base. Bell argues that there was no evidence that the juror's job was, in fact, technical in nature. The prosecutor, however, could logically assume that one who worked as a supervisor at an Air Force base was a "technically oriented person," and such an assumption would be race-neutral. See *Thomas v. State*[12] (an explanation is race-neutral where it is "not based on a characteristic or stereotype peculiar to any race," but instead is "based on the personal experience of the venireman in question"). And, there is no evidence in the record to rebut or even cast doubt on such an assumption — i.e., there is no evidence which would indicate that the juror's job was not technical in nature. Accordingly, we cannot say that the State's reason for striking this juror was "so implausible or fantastic that it render[ed] the explanation pretextual." (Punctuation omitted.) *Barnes*, supra, 269 Ga. at 350 (6).

Moreover, Bell's argument ignores the fact that the prosecutor also struck this juror because of his perceived hostility toward the State. It is well established that perceived hostility toward the State constitutes "a fair basis for exercising a peremptory strike." *Redding v. State*.[13] See also *Duffie*, supra, 301 Ga. App. at 611-612 (3).

Bell also challenged the State's fifth and eighth strikes, which were based on the fact that the prosecutor had difficulty understanding the jurors in question, and was therefore concerned about their ability to articulate their positions or perhaps to reason. With respect to these jurors, Bell first argues that the State's assertion that "it could not understand certain 'ethnic' manners of speech [is] racially suspect on its face." There is, however, no evidence in the record that the prosecution could not understand these jurors because of their "manner of speech," ethnic or otherwise. Indeed, Bell's argument in this regard appears to be based on the same presumptions and/or stereotypes that *Batson* is designed to protect against.

Bell further argues that one of the white jurors seated also "made statements consistent with a lack of understanding." Bell, however, points to no record cites that support his argument. "[T]he trial court decided [this] issue of fact in favor of the State, and under

---

[12] *Thomas v. State*, 274 Ga. 156, 161 (5) (549 SE2d 359) (2001).
[13] *Redding v. State*, 239 Ga. App. 718, 720 (2) (521 SE2d 840) (1999).

our deferential standard of review, [in the absence of evidence to the contrary,] we cannot say the trial court's determination was clearly erroneous." (Punctuation omitted.) *Byron*, supra, 229 Ga. App. at 798 (5).

2. Nor do we find any merit in Bell's claim that the trial court erred in denying his motion for a directed verdict. That motion was based on the argument that the State's case relied too heavily on the evidence concerning the victims' pretrial identification of the burglars. Bell asserted that the identifications were tainted, and therefore lacked credibility. As the trial court noted in denying Bell's new trial motion, however, the issue on a motion for a directed verdict is not the credibility or the admissibility of the evidence. Rather, it is whether, based on the evidence presented, "any rational trier of fact could [find] the essential elements of the crime beyond a reasonable doubt." (Punctuation omitted.) *Crawford v. State*.[14] "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case," the denial of a motion for a directed verdict will be upheld. (Punctuation omitted.) Id. See also *Overton v. State*[15] ("[a] motion for a directed verdict of acquittal should be granted only when there is no conflict in the evidence and the evidence with all reasonable deductions and inferences therefrom demands a verdict of acquittal as a matter of law").

At the time trial counsel moved for the directed verdict below, the allegedly tainted identification evidence had been admitted, without objection. Accordingly, in deciding the motion for a directed verdict, "the trial court properly considered [that] evidence, and did not err by denying [the] motion. . . ." (Punctuation omitted.) *Overton*, supra, 270 Ga. App. at 289 (3) (denial of motion for directed verdict proper where defendant claimed that the State's case relied on inadmissible evidence, but such evidence had been admitted without objection).

Furthermore, even in the absence of the testimony concerning the victims' pretrial identification of Bell and his co-defendant, there was sufficient evidence to support Bell's conviction. That evidence included the fact that Bell and his co-defendant matched the general description of the burglars that the victims gave to police; that they were seen walking a short distance from the scene, not long after the burglary occurred; that at the time police first saw them, Bell's co-defendant was carrying a backpack stolen during the break-in; that when he saw police, the co-defendant immediately discarded the

[14] *Crawford v. State*, 301 Ga. App. 633, 635 (1) (688 SE2d 409) (2009).
[15] *Overton v. State*, 270 Ga. App. 285, 289 (3) (606 SE2d 306) (2004).

backpack; and that a number of items stolen during the burglary were recovered from the front porch of Bell's residence.

3. Although Bell raised an ineffective assistance of counsel claim in his new trial motion, he did not allege that counsel was ineffective for failure to object to the admission of the pretrial identification evidence. On appeal, however, this ground represents the sole basis for Bell's ineffective assistance claim. "Where new counsel raises the issue of trial counsel's ineffectiveness on motion for new trial, any ineffective assistance of trial counsel claims not raised at that time are waived." *McGlocklin v. State*.[16] "Such claims unasserted at the trial level are procedurally barred," and "[o]nce a claim is procedurally barred, there is nothing for this Court to review." (Punctuation omitted.) *Wilson v. State*.[17] Because Bell has waived this particular ineffective assistance claim, we do not address the same.

*Judgment affirmed. Barnes, P. J., and Senior Appellate Judge William LeRoy McMurray, Jr., concur.*

DECIDED OCTOBER 26, 2010 —
RECONSIDERATION DENIED NOVEMBER 18, 2010.

*Bernadette C. Crucilla*, for appellant.
*Howard Z. Simms, District Attorney, Jonathan L. Adams, Assistant District Attorney*, for appellee.

---

[16] *McGlocklin v. State*, 292 Ga. App. 162, 163 (664 SE2d 552) (2008).
[17] *Wilson v. State*, 286 Ga. 141, 144 (4) (686 SE2d 104) (2009).