## A11A1441. DECAPITE v. THE STATE.
### (720 SE2d 297)

BARNES, Presiding Judge.

Following the denial of his motion for new trial, Steven Joseph Decapite appeals his convictions by a Houston County jury for armed robbery, four counts of burglary, four counts of theft by taking, and criminal attempt to commit burglary. Following our review, we affirm.

Viewed favorably to the jury's verdict, the evidence shows that between September 6, 2007 and October 7, 2007, there were attempted break-ins or robberies at four local businesses. During the first crime on September 6, shortly before midnight, a man whose face was covered with a bandana entered the Extended Stay Hotel, assaulted the night auditor with a stun gun, and took $200 from the cash drawer. A second man accompanied the masked man. The auditor could not identify either man.

On September 22, 2007, when the kitchen manager of Neighbor's Bar and Grill came to work she discovered that the alarm had been disarmed, the office door kicked in, and the safe, which contained between $3,000 to $4,000, had been taken from the office. One week later, at this same restaurant, the alarm was triggered. When police responded they discovered that the office door had been kicked in and that there were signs of pry marks on the cash drawer and the exterior door leading from the back of the restaurant to an alley. The new safe, which was connected to a shelf by a steel cable, was hanging from the shelf.

On September 30, 2007 at around 5:00 a.m., police responded to the burglary alarm at Bulldawg Café. There was damage to the deadbolt on the rear door, but the door was "still secure, [although] slightly ajar." The officer investigating the scene reported the incident to a supervisor, who also responded and checked for a break-in. The scene was not processed. Approximately 30 minutes later, police responded to a report of a burglary at Shenanigan's Pub. The alarm had been triggered on the rear door, but the door was still secure. When the manager arrived and opened the door, he discov-

ered that the safe was missing from his office. The safe contained cash and checks valued at approximately $1,000.

On October 5, 2007, after closing the restaurant, the kitchen manager at Bulldawg Café was smoking marijuana with Chris Damore, a former employee, when he accidentally triggered the burglar alarm. When police responded, the men were arrested. Both men later cooperated with police and identified several people, including Decapite, as being involved with the recent crimes at the hotel and restaurants. Damore testified that he went to the restaurant to distract the manager so that Decapite and his accomplice, Jason White, could enter the restaurant. He further testified that the two men hid in the restaurant until the police left, and that he called Decapite from jail and gave him the code to the restaurant's alarm. Damore testified that the men said they did not take anything from the restaurant, but White testified that he and Decapite took the safe and a "Bulldawg" statue, and had "stiffed" Damore.

On October 6, 2007, when police executed a search warrant at Decapite's trailer home that he shared with White and two women — Jennifer Singletary and Jessica Arnold — they recovered the safe from Bulldawg Café, a second safe, a cash register drawer, and several bank bags. Decapite, White, and the two women were not present when the trailer was searched, and left town again when they discovered that police had searched their home. Decapite was later arrested in Virginia, and he, White, the two women, and Damore were indicted on assorted charges related to the burglaries.

Decapite's four co-defendants all pled guilty to their respective charges, and testified against him at the trial. Decapite was found guilty of armed robbery, four counts of burglary, four counts of theft by taking, and one count of criminal attempt to commit burglary.

On appeal, Decapite contends that his trial counsel was ineffective on several grounds. To prevail on any of these claims, he must show that his trial counsel performed deficiently and that, but for that unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SC 2052, 80 LE2d 674) (1984); *Long v. State*, 287 Ga. 886, 891 (700 SE2d 399) (2010).

1. Decapite first contends that trial counsel was ineffective in failing to object to the trial court's preliminary jury instructions. He maintains that the trial court failed to mention "critical concepts of burden of proof, reasonable doubt, and the presumption of innocence" in its pretrial instructions and also erroneously instructed the jury to "keep an open mind," which he contends, negated his presumption of innocence.

At the motion for new trial hearing, trial counsel testified that in

retrospect "as I sit here today . . . [the preliminary jury instructions were] probably objectionable," and also that he could not attribute his failure to object to the instructions to trial strategy. However,

> [t]here is no requirement that a trial court charge on substantive matters such as reasonable doubt and presumption of innocence prior to the presentation of evidence. . . . [W]e commend[ ] educating lay persons as to trial procedures by a pre-evidentiary charge but no requirement [is] imposed that an instruction of this nature [is] mandatory. We only caution[ ] that if a charge is given it should be correct and not prejudicial.

*Clark v. State*, 141 Ga. App. 257, 257-258 (1) (233 SE2d 246) (1977). OCGA § 5-5-24 (b) requires only that the trial court instruct the jury in the law at the close of evidence. See *Little v. State*, 230 Ga. App. 803, 805 (2) (498 SE2d 284) (1998). In doing so, it is required

> to instruct comprehensively on the law applicable to the case, i.e., those charges which are relevant and necessary to weigh the evidence and enable the jury to discharge its duty, OCGA § 15-12-139, and which would constitute error under OCGA § 5-5-24 (c) if not given.

*Griffith v. State*, 264 Ga. 326, 327 (2) (444 SE2d 794) (1994). Here, in its closing instruction to the jury, the trial court properly instructed the jury on the presumption of innocence, reasonable doubt, the burden of proof, and that the burden "never shifts to the defendant to introduce evidence or prove innocence." Thus, as the trial court was not required to give preliminary instructions, it did not prejudice Decapite's defense in not preliminarily instructing the jury on burden of proof, presumption of innocence, and reasonable doubt. The doctrines were presented in the trial court's charge at the close of evidence, as required by OCGA § 5-5-24 (b). Hence, Decapite's trial counsel's failure to object was not ineffective assistance of counsel.

Likewise, we see no error in the trial court's instruction to the jury to "view the evidence with an open mind and reach no final conclusions until the trial is over." Such an instruction, does not, as Decapite argues, divest him of the presumption of innocence.

2. Decapite also contends that the trial court erred in admitting evidence of "extrinsic crimes" without a hearing pursuant to *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991) and Uniform Superior Court Rule 31.3 (B), and that trial counsel was ineffective for failing to object to its admission. Decapite's allegation,

however, is without merit. No hearing was required in this case because the alleged similar crimes evidence he complains about were nothing more than debit cards, credit cards, and identification cards that were retrieved from the safes found at his home. The evidence was introduced to show a connection between Decapite and the stolen safes, and not to show independent offenses so as to warrant a hearing under *Williams*. Although Decapite argues that the State failed to show that the cards were actually in the safes, this argument goes to the weight of the evidence, not its admissibility. See *Scott v. State*, 248 Ga. App. 542, 544-545 (1) (b) (545 SE2d 709) (2001).

Accordingly, because the trial court did not err by allowing the State to introduce the credit cards, debit cards, and other identification alleged to have been contained in the safe without a *Williams* hearing, Decapite's trial counsel did not perform deficiently by failing to make a meritless objection to the admission of this evidence. See *Winfrey v. State*, 286 Ga. App. 718, 724 (6) (a) (650 SE2d 262) (2007) (failure to make a meritless or futile motion does not provide a basis for finding ineffective assistance of counsel).

3. Decapite also contends that trial counsel was ineffective for failing to object to the introduction and publication to the jury of the search warrant and affidavit because the statements contained in the affidavit were inadmissible hearsay. He further contends that permitting the document to be published to the jury and sent out with them during deliberations violated the continuing witness rule.

> In Georgia, the continuing witness objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once.

*Tanner v. State*, 259 Ga. App. 94, 98 (3) (576 SE2d 71) (2003).

Pretermitting whether trial counsel's performance was deficient for failing to object to the admission and publication of the search warrant and affidavit, Decapite must also show that counsel's deficient performance so prejudiced him that there is a reasonable probability the outcome of trial would have been different but for counsel's error. Although "[his] burden is to show only 'a reasonable probability' of a different outcome, not that a different outcome would have been certain or even 'more likely than not,' " *Schofield v. Gulley*, 279 Ga. 413, 416 (I) (A) (614 SE2d 740) (2005), Decapite has not carried this burden because the evidence of his guilt is

overwhelming. *Razor v. State*, 259 Ga. App. 196, 200-201 (5) (d) (576 SE2d 604) (2003). See also *Kent v. State*, 245 Ga. App. 531, 533 (3) (538 SE2d 185) (2000) (allowing victim's statement to go out with jury violated the continuing witness rule, but the error was harmless since the evidence it contained was brought out during trial and evidence of guilt was overwhelming).

Here, the confidential informant whose statements were included in the search warrant was Damore, who also testified at trial, was subject to extensive cross-examination, and whose testimony was cumulative of the testimony given by the other co-defendants.

> [I]n light of the strength of the evidence that was properly presented to the jury, we conclude that [Decapite] has not shown that a reasonable probability exists that, but for the jury having [the search warrant and affidavit] during its deliberations, the outcome of his trial would have been different.

*Parnell v. State*, 280 Ga. App. 665, 672 (2) (d) (634 SE2d 763) (2006).

4. Decapite contends that his trial counsel was ineffective in failing to object to testimony about the videotaped statement co-defendant Jessica Arnold gave police after she was arrested. During the investigating detective's testimony, the State played several segments of Arnold's statement. Decapite argues that the veracity of Arnold's testimony was never at issue, and the video statements, which were consistent with her trial testimony, were hearsay and also improperly bolstered the credibility of her trial testimony.

A witness's prior consistent statement is admissible at trial "only where (1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination." (Citations and punctuation omitted.) *Baugh v. State*, 276 Ga. 736, 738 (2) (585 SE2d 616) (2003). A witness's veracity is "placed in issue so as to permit the introduction of a prior consistent statement only if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination." Id.

Pretermitting whether trial counsel erred by not challenging this testimony, as noted earlier, in claims of ineffectiveness of trial counsel, it is necessary to show not only error but prejudice. If Decapite fails to meet his burden of proving either prong of the *Strickland* test, this Court need not examine the other prong. *Fuller v. State*, 277 Ga. 505, 507 (3) (591 SE2d 782) (2004).

Here, even if the statement was inadmissible, Decapite cannot show that its admission was harmful or requires reversal. Significant other evidence — including the testimony of three other co-

defendants, and the physical evidence belonging to the restaurants which was located at his trailer — implicated him in the crimes. Thus, even if his trial counsel failed to preserve a claim that Arnold's testimony was erroneously bolstered by prior hearsay statements, Decapite failed to establish that, but for this alleged deficient performance, there was a reasonable probability that the outcome of the trial would have been different.

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED NOVEMBER 22, 2011 — ▮▮▮▮▮▮▮▮

*Hogue & Hogue, Laura D. Hogue, Michael K. McIntyre*, for appellant.

*George H. Hartwig III, District Attorney, Venita S. McCoy, Daryl E. Manns, Assistant District Attorneys*, for appellee.