A11A1891. KIRKLAND v. THE STATE.
A11A1968. BAILEY v. THE STATE.
(726 SE2d 644)

MILLER, Judge.

Following a joint jury trial, David L. Kirkland and Rickey Bailey were both convicted of armed robbery (OCGA § 16-8-41 (a)). Bailey was also convicted of aggravated assault (OCGA § 16-5-21 (a) (1)). Both appeal from the trial court's denial of their respective motions for new trial.

In Case No. A11A1891, Kirkland contends that (i) the evidence was insufficient to sustain his conviction; (ii) the trial court erred in denying his challenges to the State's four peremptory strikes under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986);

(iii) the trial court erred in allowing the State to admit inadmissible hearsay; (iv) the trial court erred in admitting into evidence bloody money, clothing, and photographs; (v) the prosecutor impermissibly commented on his failure to testify at trial; (vi) the trial court violated the continuing witness rule by permitting trial witnesses' written statements to go out to the jury during deliberations; (vii) the bailiff engaged in unauthorized communications with the jury during jury deliberations; and (viii) trial counsel provided ineffective assistance.

In Case No. A11A1968, Bailey contends that (i) the trial court erred in denying his *Batson* challenges; (ii) the prosecutor impermissibly commented on his failure to testify; and (iii) trial counsel was ineffective for failing to object to a violation of the continuing witness rule. Discerning no error, we affirm in both cases.

On appeal from a criminal conviction, we view the evidence in a light most favorable to the jury's verdict, and the defendant no longer enjoys a presumption of innocence. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979); *Goss v. State*, 305 Ga. App. 497 (699 SE2d 819) (2010).

So viewed, the evidence shows that on the night of August 29, 2007, the victim parked his vehicle in his driveway and was exiting his vehicle when Kirkland and Bailey approached him. Bailey hit the victim several times on the head with a gun, causing the victim to lose a considerable amount of blood. Fearful of being shot, the victim gave Kirkland and Bailey $216 in cash. After Kirkland and Bailey fled, the victim called the police.

Shortly thereafter, a police officer responding to the dispatch call spotted Kirkland and Bailey, both of whom matched the description given by the victim; the officer saw them enter a vehicle about a mile away from the scene of the robbery. The officer stopped the vehicle and approached Kirkland and Bailey. The officer observed that Kirkland and Bailey were sweating profusely. The officer questioned Kirkland and Bailey and asked them to exit the vehicle when they were unable to provide credible answers to his questions. When he got out of the vehicle, Kirkland fled into the nearby woods, dropping his cell phone in the process. The officer then arrested Bailey.

Using Kirkland's cell phone, the investigating officer subsequently identified Kirkland. On the next day, the officer located Kirkland at a residence, hiding in a closet. At the time of his arrest, Kirkland had in his possession a bloody $100 bill, a denomination that had been stolen from the victim during the armed robbery.

Following both of their arrests, Kirkland and Bailey were read their *Miranda* rights and agreed to be interviewed by the investigating officer. Kirkland also gave a written statement. Both Kirkland and Bailey admitted to being with each other on the night of the

robbery, denied any involvement in the offense, and repeatedly changed their version of events after the investigating officer was unable to confirm their alleged alibis. Additionally, in the course of his investigation, the investigating officer spoke to Bailey's former jail-mates, who stated that Bailey admitted that he robbed and assaulted the victim.

### Case No. A11A1891

1. Kirkland challenges the sufficiency of the evidence identifying him as a party to the crime.[1] Notwithstanding Kirkland's conten-tions, the identification evidence is sufficient, and therefore, his conviction was authorized.

At trial, the victim identified Kirkland as matching the descrip-tion of one of the men who attacked him. See *Ferguson v. State*, 221 Ga. App. 415, 419 (2) (471 SE2d 528) (1996) (in-court identification of defendant as armed robber is direct evidence of guilt). Moreover, Bailey, who was tried with Kirkland, admitted to others that he robbed and assaulted the victim.[2] Kirkland admitted that he was with Bailey on the night of the offense and provided untruthful statements about his alleged alibi during the time of the offense. Moreover, Kirkland fled from the police officers as they initially attempted to arrest him. See *Tauch v. State*, 305 Ga. App. 643, 645-646 (1) (700 SE2d 645) (2010) (holding that the jury was entitled to consider a defendant's flight from officers as evidence of his guilt). When he was arrested, Kirkland possessed a bloody $100 bill, which was among the denominations the victim provided to his assailants. The above evidence authorized the jury to exclude every reasonable

---

[1] In his brief, Kirkland seeks to expand his enumerations of error to include a claim that the verdict was against the weight of the evidence and contrary to principles of equity and justice. However, "an appealing party may not use its brief to expand its enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of the errors." (Citation and footnote omitted.) *Tucker v. State*, 299 Ga. App. 278, 280 (2) (683 SE2d 356) (2009). Moreover, Kirkland's arguments may only be made to a trial court, not to this Court, as we do not have the discretion to grant a new trial on these grounds. *Lewis v. State*, 304 Ga. App. 831, 833 (1) (698 SE2d 365) (2010). We will only reverse the denial of a motion for new trial on evidentiary grounds when there is no evidence to support the verdict. *Souder v. State*, 301 Ga. App. 348, 352 (3) (687 SE2d 594) (2009).

[2] Bailey's statements, standing alone, did not directly inculpate Kirkland in the charged crimes, and therefore the introduction of these statements did not violate *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). See *Daniel v. State*, 285 Ga. 406, 408 (3) (b) (677 SE2d 120) (2009); see also *Smith v. State*, 308 Ga. App. 190, 190 (707 SE2d 135) (2011) ("*Bruton* . . . only excludes statements by a non-testifying co-defendant that directly inculpate the defendant, and *Bruton* is not violated if a co-defendant's statement does not incriminate the defendant on its face and only becomes incriminating when linked with other evidence introduced at trial.") (punctuation and footnote omitted).

hypothesis other than that Kirkland was a party to the crime of armed robbery. See *Hart v. State*, 305 Ga. App. 259, 262 (1) (a) (699 SE2d 445) (2010) ("Whether every reasonable hypothesis except that of the guilt of the defendant has been excluded is a question for the jury.") (punctuation omitted); *Millender v. State*, 286 Ga. App. 331, 331-332 (1) (648 SE2d 777) (2007) (holding that defendant's acts of standing nearby as co-defendant robbed and threatened victim, and his subsequent flight with co-defendant was sufficient to convict defendant as a party to armed robbery).

2. Kirkland contends that the trial court erred in denying his *Batson* challenges to the prosecutor's peremptory strikes of four African-American jurors. We disagree.

> The evaluation of a *Batson* challenge involves a three-step process: (1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven discriminatory intent.

(Citations and punctuation omitted.) *Kimble v. State*, 301 Ga. App. 237, 245 (6) (687 SE2d 242) (2009). "A trial court's finding as to whether the opponent of a strike has proven discriminatory intent is entitled to great deference and will not be overruled unless clearly erroneous." (Citation omitted.) *Chandler v. State*, 281 Ga. 712, 715 (3) (642 SE2d 646) (2007).

Here, Kirkland raised a *Batson* challenge when the State used its peremptory strikes against four African-American jurors from the jury pool without striking any white jurors. The trial court did not determine whether Kirkland made a prima facie showing of racial discrimination; instead, it proceeded to an evaluation of the State's explanations for its strikes. After the State offered its race-neutral reasons, the trial court denied Kirkland's *Batson* motion.

Since the trial court proceeded directly to an evaluation of the State's explanations for its strikes, the issue of a prima facie showing is moot. *Chandler*, supra, 281 Ga. at 715-716 (3). With respect to the State's explanations, the State stated that it used its first strike against a juror who stated that she would need forensic evidence in order convict a defendant. The State stated that it struck the second juror in question because the juror had once hired Kirkland's attorney, knew the defendants, and answered that he would also need physical evidence to convict a defendant. The State's third strike was

based upon the juror's husband having recently been tried for murder, in addition to her affirmative response that she needed to see forensic evidence. The State used its fourth strike against an alternate juror because she also stated that forensic evidence would be helpful to establish a defendant's guilt in this case. As the State's explanations were "based on something other than the juror's race," the trial court correctly found that each of these reasons was race-neutral. See *Bass v. State*, 271 Ga. App. 228, 231-232 (4) (609 SE2d 386) (2005) (juror's familiarity with accused was a race-neutral explanation to strike); *Daniels v. State*, 276 Ga. 632, 634 (3) (580 SE2d 221) (2003) (African-American jurors who said that they had a close friend or family member falsely accused of a crime were properly struck from jury); *Chunn v. State*, 210 Ga. App. 209, 210 (2) (435 SE2d 728) (1993) (reasonable suspicion about prospective juror's impartiality may justify exercise of peremptory strike). Kirkland failed to rebut the State's explanations, and we cannot say that the State's reasons for exercising its peremptory strikes were "so implausible or fantastic that it render[ed] the explanation[s] pretextual." (Citation and punctuation omitted.) *Bell v. State*, 306 Ga. App. 853, 858 (1) (703 SE2d 680) (2010). Accordingly, the trial court did not err in denying the *Batson* challenges.

3. Kirkland next contends that the trial court erred by admitting testimony that constituted hearsay and violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. However, the record shows that Kirkland raised no objection to the trial testimony at issue. Absent an objection, his hearsay and Confrontation Clause arguments are waived. See *Kimble*, supra, 301 Ga. App. at 243 (3).

4. Kirkland also enumerates as error the trial court's decision to admit into evidence bloody clothes, the bloody $100 bill, and photographs of blood.[3] When the State moved to admit these items into evidence, however, Kirkland did not object. As such, Kirkland's failure to object waives any error regarding the admission of the State's evidence at issue. See *Frazier v. State*, 278 Ga. 297, 299 (7) (602 SE2d 588) (2004).

5. Kirkland contends that the prosecutor made improper comments regarding his failure to testify at trial. We disagree.

---

[3] Kirkland does not identify what photographs should have been excluded. In addition to the State's photographs, Kirkland also introduced several images of the bloodied victim taken when the victim was at the hospital. However, to the extent Kirkland argues that the trial court erred by admitting the photographs he proffered, Kirkland "cannot complain of error that his own conduct aided in causing." (Punctuation and footnote omitted.) *McConnell v. State*, 263 Ga. App. 686, 687 (2) (589 SE2d 271) (2003).

In her closing argument, the prosecutor stated:

[W]hat did [the investigating officer] tell you? He told you that he was doing his job by trying to follow up [on] any alibis that [Kirkland and Bailey] might have, not in an attempt to implicate them as they wanted you to believe, but in an attempt to see if they could be exonerated. He interviewed the defendants because he was doing his job. He checked out the defendants' alibis because he wanted the same thing that you and I want, ladies and gentlemen, to catch the people who did this robbery and to get them off the streets and get the right people.

In [Kirkland's and Bailey's] discussions with [the investigating officer], if the defendants were truly innocent men facing time on charges as serious as these ones, don't you think they would've wanted the same thing, to prove to [the investigating officer] that they did not do this so that . . . .

In order for the prosecutor's remarks to constitute prosecutorial misconduct, there must be "a finding that the prosecutor's manifest intent was to comment on [the defendant's] failure to testify or that the jury would naturally and necessarily understand the remarks as a comment on [the defendant's] silence." (Citation omitted.) *Wellons v. State*, 266 Ga. 77, 86 (10) (463 SE2d 868) (1995). When we read the challenged language in context,[4] we conclude that the prosecutor's remark was not intended to comment on Kirkland's decision not to testify and was unlikely to be interpreted by the jury as a comment on his silence at trial; the remarks were instead intended to address, albeit inartfully, Kirkland's untruthful statements about his alibis. Moreover, notwithstanding Kirkland's claims otherwise, we do not find that the prosecutor shifted the burden of proof when commenting on Kirkland's failure to substantiate his alibis. Cf. *Scott v. State*, 274 Ga. 476, 479 (4) (554 SE2d 488) (2001) (at trial, prosecutor could comment on defendant's failure to substantiate his post-arrest statements regarding alibis); *James v. State*, 204 Ga. App. 723 (1) (420 SE2d 383) (1992) (defendant's post-arrest statements were properly in evidence and thus were suitable subject for closing argument).

---

[4] The prosecutor also argued:
Getting back to the testimony of the [investigating officer], he told you about the circumstances in which he interviewed . . . Kirkland and [Bailey]. He told you that the statements they gave to him were freely and voluntarily given. And he also told you that the statements that they gave to him were lies.

Furthermore, the trial court gave a curative instruction, and therefore, there is no reversible error. See *Wellons,* supra, 266 Ga. at 86 (10).

6. Kirkland next contends that the bailiff impermissibly communicated with the jury when the foreperson told the bailiff that the jury was deadlocked. Kirkland did not inquire into this communication or otherwise object to it at the time it occurred; nor did he raise the issue in his motion for new trial. Since Kirkland failed to timely raise an objection to the bailiff's communication with the jury, he has waived any error. *Herrington v. State,* 243 Ga. App. 265, 266 (1) (533 SE2d 133) (2000).

7. Kirkland contends that the trial court violated the continuing witness rule by permitting written statements admitted into evidence — including the victim's and Kirkland's statements to the police — to go out to the jury while it deliberated. The record shows, and Kirkland concedes, that the trial court noted it would not allow the written statements to go to the jury absent the parties' consent. Kirkland expressly agreed to allow the statements at issue to go to the jury. As a result, Kirkland "cannot complain of error that his own conduct aided in causing." (Punctuation and footnote omitted.) *McConnell v. State,* 263 Ga. App. 686, 687 (2) (589 SE2d 271) (2003).

8. Kirkland also enumerates as error that he was denied effective assistance of counsel. We disagree.

To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Fosselman v. State,* 306 Ga. App. 84, 85 (2) (701 SE2d 559) (2010).

> If [a defendant] fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court need not examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Punctuation and footnotes omitted.) *Fosselman,* supra, 306 Ga. App. at 85 (2).

Kirkland asserts numerous grounds in which his counsel was

allegedly ineffective.[5] However, Kirkland did not assert these as grounds for ineffective assistance of counsel in his motion for new trial, his amended motion for new trial, or at the motion for new trial hearing.[6] "Thus, such allegations of ineffectiveness are deemed waived because a defendant is obligated to raise all allegations of ineffectiveness of counsel at the earliest practicable moment." (Citations and punctuation omitted.) *Bagwell v. State*, 270 Ga. 175, 179 (1) (f) (508 SE2d 385) (1998); see *Phillips v. State*, 284 Ga. App. 224, 231 (4) (a) (644 SE2d 153) (2007) (deeming specific claim of ineffective assistance to be waived where defendant failed to raise the specific ground in his motion for new trial or in the hearing on the matter). Therefore, we will not consider Kirkland's additional ineffectiveness claims on appeal. See *Bagwell*, 270 Ga. at 179 (1) (f).

## Case No. A11A1968

9. Bailey contends that the trial court erred in denying his *Batson* challenges to the State's peremptory strikes of four African-American jurors. Bailey's claim is identical to the claim raised by Kirkland, which we addressed and rejected in Division 2 above. Accordingly, we conclude Bailey's contention is without merit.

10. Bailey also contends that the prosecutor made improper comments regarding his failure to testify. Bailey raises the same argument as Kirkland, which we addressed and rejected in Division 5 above. As a result, there is no merit to Bailey's claim.

11. Bailey also contends that his trial counsel was ineffective for allowing the written statements of the victim, Kirkland, and Bailey's former jailmate to go out to the jury in violation of the continuing witness rule.

> In Georgia, the continuing witness objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go

---

[5] Kirkland contends that trial counsel was ineffective for (i) failing to object to the introduction of bloody clothing and money, as well as photographs depicting blood; (ii) failing to request a severance; (iii) failing to object to hearsay testimony; (iv) permitting a violation of the continuing witness rule without properly advising Kirkland about its danger; (v) failing to inquire into the bailiff's communication with the jury; and (vi) failing to argue "mere presence" as a defense.

[6] At the motion for new trial hearing, Kirkland argued only that his trial counsel was ineffective for failing to object on the grounds of relevance to the testimony of one forensic biologist. However, Kirkland does not raise this claim on appeal.

out with the jury to be read again during deliberations, while oral testimony is received but once.

(Citation omitted.) *Decapite v. State*, 312 Ga. App. 832, 835 (3) (720 SE2d 297) (2011).

Assuming that Bailey's counsel was deficient for allowing the written statements to go out with the jury, Bailey cannot meet his burden to show that there is a reasonable probability that the trial result would have been different if not for counsel's deficiency. At trial, Bailey's former jailmate read from his written statement that Bailey admitted to robbing and assaulting the victim. This witness's testimony was cumulative of the testimony given by another one of Bailey's former jailmates. The victim also read from his written statement. The substance of Kirkland's written statement was introduced by the investigating officer; Kirkland's statements were only that he and Bailey were together on the night of the offense, which was cumulative of other evidence in the record.

> In light of the strength of the evidence that was properly presented to the jury, we conclude that [Bailey] has not shown that a reasonable probability exists that, but for the jury having [the written statements] during its deliberations, the outcome of his trial would have been different.

(Citation and punctuation omitted.) *Decapite*, supra, 312 Ga. App. at 836 (3) (counsel was not ineffective for permitting a search warrant and affidavit to go out to the jury where the affiant testified at trial, was subject to extensive cross-examination, and his testimony was cumulative of other evidence); cf. *Kent v. State*, 245 Ga. App. 531, 533 (3) (538 SE2d 185) (2000) (allowing victim's statement to go out to the jury violated the continuing witness rule, but the error was harmless since the evidence it contained was brought out during trial and evidence of guilt was overwhelming).

*Judgments affirmed. Ellington, C. J., and Doyle, P. J., concur.*

DECIDED MARCH 26, 2012.

*Kimberly L. Copeland*, for appellant (case no. A11A1891).
*Robbin Shipp*, for appellant (case no. A11A1968).
*S. Hayward Altman, District Attorney, John A. Fitzner III, Mary K. McKinnon, Assistant District Attorneys*, for appellee.