**SECOND DIVISION
MILLER, P. J.,
HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS
COURT. ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.*

**January 10, 2022**

# In the Court of Appeals of Georgia

A21A1440. GRIMES v. THE STATE.

HODGES, Judge.

Following a jury trial, the Superior Court of Walker County entered a judgment of conviction against Ollie Lester Grimes for four counts of aggravated sodomy, four counts of aggravated sexual battery, three counts of child molestation, two counts of aggravated child molestation, one count of rape, nine counts of sexual exploitation of children, and four counts of possession of a firearm by a convicted felon. Grimes appeals from the trial court's denial of his motion for new trial as amended, arguing that: (1) the trial court erred in denying his special demurrer; (2) the trial court erred in admitting other acts evidence because it did not identify the purpose for which the evidence was admitted; and (3) he received ineffective assistance of trial counsel. For the following reasons, we affirm.

Viewed in a light most favorable to the verdict,[1] the evidence adduced at trial revealed that Grimes resided with his fiancé, K. D., in Walker County. Three of K. D.'s granddaughters also lived with the couple: eight-year-old G., seven-year-old A., and three-year-old K. On the evening of January 3, 2017, as K. D. walked from her bedroom to the dining room for a drink, she looked into G. and A.'s bedroom and saw Grimes facing the girls' bunk bed and "kind of swaying, moving something that just didn't look right."

As K. D. entered the room to investigate, Grimes said, "[n]othing is going on[,]" but as K. D. walked past him toward the bed, Grimes said, "I was just rubbing it." K. D. then saw G. bent over on the bed, nude from the waist down, with her clothes at her ankles; Grimes had been standing right behind G. when K. D. entered the room. K. D. asked G. what happened and assured her that she would not be in trouble, and G. told her that Grimes "was sticking his dick in [her] butt." G. also stated that Grimes "did [A.] in the front and her in the back" and that "he had done it before[.]" When G. stated that the abuse had "been going on for a couple of years," Grimes volunteered that "[i]t hasn't been going on that long."

---

[1] See, e.g, *Bernal v. State*, 358 Ga. App. 681, 682 (856 SE2d 64) (2021).

K. D. ordered Grimes to leave immediately, but before he left the room, he walked over to a computer in the girls' room "and sat down and did something." He then pleaded with K. D. not to call the police and said, "I can't go to jail. If I go to jail, I won't get any help in jail." K. D. gathered A. and G. and took them to her bedroom while Grimes got dressed and left. K. D. then called her daughter, R. D. (the children's mother), and told her about Grimes' abuse. R. D., who was on her way to work, turned around and drove back to Grimes' residence, calling the police on the way. When R. D. arrived, G. apologized for not revealing Grimes' abuse sooner, and also stated that "sometimes [Grimes] would make [K.] suck his dick."

At some point that evening, Grimes called his son and said he "got caught messing with the girls." The two met at a gas station and a fast food restaurant, during which Grimes shared more details of the abuse with his son, including that Grimes had "been touching the girls and doing pretty much everything with them, to include using like toys and stuff on them." Grimes was not sure when the abuse began, but thought that it was sometime after 2014. Grimes also gave his son a laptop, indicating that it had been wiped using "the same thing that Hillary Clinton used in her emails[,]" and that it included "videos and pictures of the girls and other stuff of that nature. . . ." Grimes also signed the title to his truck over to his son, after which the

son discovered a flash drive under the driver's seat that contained child pornography. Grimes' son contacted a police detective and surrendered the computer, flash drive, and Grimes' cellular telephone. Forensic investigation by the Georgia Bureau of Investigation found a cache of child pornography on each device.

During forensic interviews the next day, G. and A. recounted Grimes' abuse in graphic detail. Both A. and G. underwent a physical exam; while G.'s examination was unremarkable, A.'s examination revealed bruising and tearing of her hymen and tearing in the anus. As a result, the nurse who performed the examinations concluded that A.'s examination "was suspicious for abuse." A nurse also collected a rape kit from G., during which G. described Grimes' acts of anal sodomy on her, including using his fingers and a vibrator. Scientific testing of a swab of G.'s rectum revealed both her DNA and DNA consistent with Grimes.

A search of Grimes' residence revealed another computer and several firearms.[2] Inside G. and A.'s bedroom, detectives found a handgun, energy drinks, several penis rings, and an empty blister pack of generic Viagra. Detectives also found other adult

---

[2] Grimes previously pled guilty to a charge of child abuse in Hamilton County, Tennessee and admitted on cross-examination that he could not possess firearms as a convicted felon.

toys in the residence, including a vibrator and a dildo that appeared to have been used in videos found on Grimes' computer.

Grimes testified at trial and denied that he ever touched the victims inappropriately, displayed adult toys to them, or viewed child pornography.[3] A jury found Grimes guilty of each count against him. The trial court denied Grimes' motion for new trial as amended, and this appeal followed.[4]

1. In his first enumeration, Grimes contends that the trial court erred in denying his special demurrer. Grimes argues that: (1) despite testimony that the offenses charged in Counts 2, 4, and 5 occurred on a specific date, the indictment for those offenses contained a date range of over two years; and (2) Counts 9 through 13 of the indictment should have been quashed. Because Grimes failed to include a transcript of the hearing on the demurrer, however, we must affirm.

Initially, Grimes filed a generic special demurrer arguing that the indictment was defective because it "fail[ed] to fully inform him of the charge against him so that he may properly prepare his defense." In an amended special demurrer, Grimes noted

---

[3] However, in response to a question during cross-examination, Grimes stated, "I didn't trade my child porn."

[4] Grimes does not contest the sufficiency of the evidence.

that the date range for Counts 1 through 8 and Counts 9 through 13 was given as "between the 1st day of January 2015 and the 3rd day of January 2017, the exact date being unknown to the Grand Jurors[;]" He argued that the date range, which encompassed "a variety of different offenses involving three different victims" and ended "on the date of [his] arrest," was arbitrary. "[A]fter hearing evidence and the argument of counsel," the trial court denied Grimes' demurrer.

"It is well established that the burden is on the appellant to arrange for the preparation and filing of the transcript of the lower court proceedings." (Citation and punctuation omitted.) *Hensley v. Young*, 273 Ga. App. 687 (615 SE2d 771) (2005). "Moreover, where an omitted transcript is necessary for this Court to review the alleged error, we are required to presume that the lower court ruled correctly and that the evidence presented at the hearing supported that court's judgment." Id.

In this case, the trial court's order denying Grimes' demurrer states that it conducted an evidentiary hearing, and Grimes' notice of appeal requested that a "[t]ranscript of evidence and proceedings in its entirety, including transcript and record with index from pre-trial, trial, sentencing and hearing on the Motion for New Trial, . . . be transmitted to the Court of Appeals. . . ." However, no transcript of such a hearing was received by this Court, and neither party has moved to supplement the

6

record to include the transcript. "[I]t was [Grimes'] burden to ensure that the transcript was included in the record transmitted on appeal." *Carroll v. Piedmont Medical Care Corp.*, 352 Ga. App. 348, 350, n. 5 (834 SE2d 868) (2019). "In the absence of the transcript, to the extent that any additional evidence was presented at the hearing, we presume that evidence supported the trial court's ruling." Id. Therefore, we must affirm the trial court's order denying Grimes' special demurrer.

2. Next, Grimes asserts that the trial court erred in allowing other acts evidence without specifying the purpose for which the evidence had been admitted. This enumeration presents nothing for our review. Although Grimes enumerated the trial court's ruling as error, his opening brief contains no argument or citation of authority in support of the enumeration. See Court of Appeals Rule 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."). Therefore, this enumeration is deemed abandoned. See, e.g., *Patterson v. State*, 327 Ga. App. 695, 698 (3) (761 SE2d 101) (2014) (deeming claims abandoned that were not "supported with any . . . argument, citations to the record, or legal authority").

3. Finally, Grimes argues that he received ineffective assistance of trial counsel due to counsel's failure to object to cross-examination questions that referred to his

conversations with a non-testifying informant, which "deprived [Grimes] of his [S]ixth Amendment right to confront the evidence being offered against him[.]" However, a review of the record reveals that Grimes did not assert this ground "in his motion for new trial, his amended motion for new trial, or at the motion for new trial hearing." *Kirkland v. State*, 315 Ga. App. 143, 150 (8) (726 SE2d 644) (2012).

In the hearing on Grimes' motion for new trial, post-judgment counsel stated during his closing argument that trial counsel "fail[ed] to enter an objection to what was a clever way of going around hearsay for the statements concerning [the informant]." Although Grimes' post-judgment counsel argued that trial counsel "fail[ed] to object to hearsay evidence/impeachment evidence," the specific ground that trial counsel failed to object based upon a violation of Grimes' Sixth Amendment right of confrontation was not raised until Grimes' opening brief in this Court. As a result, this allegation of ineffective assistance is "deemed waived because a defendant is obligated to raise all allegations of ineffectiveness of counsel at the earliest practicable moment." (Citations and punctuation omitted.) *Kirkland*, 315 Ga. App. at 150 (8); see also *Norton v. State*, 320 Ga. App. 327, 333 (3) (739 SE2d 782) (2013)

("Where specific grounds for an ineffective assistance claim are not raised and ruled on in the trial court, they are waived and cannot be considered on appeal.").[5]

In sum, we conclude that Grimes failed to support his argument that the trial court erroneously denied his special demurrer by including a transcript of an evidentiary hearing. Furthermore, Grimes abandoned his argument concerning the admission of other acts evidence because he did not support the enumeration with argument and citation of authority. Finally, Grimes waived the specific ground of ineffective assistance of trial counsel he now asserts due to his failure to raise that ground in the trial court. Therefore, we affirm the trial court's order denying Grimes' motion for new trial as amended.

*Judgment affirmed. Miller, P. J., and Pipkin, J., concur.*

---

[5] Grimes also references "[a]nother interesting line of questioning" to which trial counsel failed to object, in which the prosecuting attorney referenced Grimes' silence during a police interview. However, this is neither enumerated as substantive error nor as a separate ground of ineffective assistance of trial counsel. As a result, we do not consider Grimes' argument on this point. See *Dole v. State*, 256 Ga. App. 146, 148 (2) (567 SE2d 756) (2002) ("[M]atters not enumerated as error will not be considered on appeal" because "[t]his [C]ourt has no jurisdiction to consider grounds which though argued are not enumerated as error according to O.C.G.A. § 5-6-40.") (citations and punctuation omitted).