**FIFTH DIVISION
MCFADDEN, P. J.,
MCMILLIAN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 25, 2019**

# In the Court of Appeals of Georgia

A19A0745. RICE v. THE STATE.                                      GS-024C

GOSS, Judge.

After a jury trial, Charles Vincent Rice was convicted of one count of armed robbery (OCGA § 16-8-41) and two counts of robbery by intimidation, a lesser included offense of robbery (OCGA § 16-8-41). He appeals from the denial of his motion for new trial, arguing that the evidence was insufficient to support his conviction of armed robbery. He also argues, in related enumerations, that the trial court erred by allowing a victim of one of the robberies identify him in videos and still photographs from the other two robberies, and that his trial counsel rendered ineffective assistance of counsel. For the following reasons, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that Rice robbed three taxi drivers over the course of a month. On February 6, 2015, John Hennessy, a taxi driver with the Yellow Taxi Company, picked up Rice at a grocery store in the early morning hours. Rice got into the front seat of the cab and asked to be driven to Bolton Street. Once they arrived, Rice had something sticking out of his jacket pointing at Hennessy. Rice then said "Do you know what this is?" and "well, give me your money." Hennessy testified that he looked down and saw something, he did not know what, sticking out of the jacket. He thought it was a gun because Rice told him that it was. Hennessy gave him the money in his pocket, about to fifty to sixty dollars, and his phone. Rice demanded Hennessey's wallet and did not believe him when he said he did not have one. Rice then demanded that Hennessy continue to drive him for about ten minutes while he attempted to make him give up his wallet. Hennessy eventually pulled over to let Rice out. Rice pulled the camera out of the taxi and ran out of the car. Hennessy identified Rice in a photo line up and at trial. Hennessy also identified Rice as the person he had briefly seen at a Krystal's fast food restaurant several days after the robbery. Hennessy testified that he pulled

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

into the parking lot and Rice walked up to get in the cab. Hennessy asked Rice if he remembered robbing him, and Rice ran off.

On February 12, 2015, Henry Wands, a taxi driver with the Yellow Taxi Company, picked up Rice as a passenger. Wands had a video camera located in his cab on the passenger side of the top of the windshield in the front. The camera also picked up audio. This video was played for the jury. Rice got into the backseat of the car and asked Wands where the camera was in the taxicab. As Wands was stopping the cab, Rice said, "I got a surprise from you[,]" as he reached from the backseat to shove something into Wands' back and indicated that he had a gun under his shirt. Rice stole Wands' money, phone, watch and jewelry. Rice then demanded the in-car surveillance camera, but Wands could not get it down so he simply unplugged it. Wands testified that he picked two photographs from a photographic lineup as looking familiar and that one of them was a photo of Rice.

On February 17, 2015, at around 1:30 a. m., Kendall Minor, a taxi driver with the Yellow Taxi Company, picked up Rice as a passenger. Minor had a video camera running in his cab at the time he picked Rice up. The video was shown to the jury. On the video, Rice can be seen reaching from the backseat to stick his hand in Minor's back. Rice orders Minor to continue driving and does not allow him to turn around

3

to look at Rice. Rice can be heard on the video telling Minor that "this is a stick up" and that he would "blow [his] . . . head off." Rice took all of Minor's money and made Minor get out of the cab with him. Rice threw the keys to the cab down on the ground and made Minor walk down the road with him for about five minutes before allowing Minor to return to the taxi. Minor testified that when Rice robbed him, "he had his hand in his shirt but that was supposed to be the gun. . . I mean[,] I'm going to tell you it looked like just his finger. He might have tricked me, but I didn't want to take any chances." Minor also testified that he likely would not have handed over his cash if he did not believe that it was possible Rice had a gun.

1. Rice argues that the evidence was insufficient to support his conviction for armed robbery against Minor. We disagree.

Count three of the indictment charged Rice with armed robbery of Minor by "use of an article or device having the appearance of an offensive weapon." OCGA § 16-8-41 (a) states that "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such a weapon."

4

Rice argues that, in light of Minor's testimony that he did not see a gun and that he thought Rice was pretending that his finger was a gun, the State failed to prove that Minor believed that Rice possessed a weapon at the time he demanded the money from the taxi driver. However, "[c]ircumstantial evidence may establish the presence of a weapon during a robbery even though the weapon is unseen." (Citation omitted.) *Maddox v. State*, 238 Ga. App. 598, 598 (1) (521 SE2d 581) (1999). "Some physical manifestation is required or some evidence from which the presence of a weapon may be inferred, but OCGA § 16-8-41 (a) does not require proof of an actual offensive weapon." (Citations omitted.) *McCluskey v. State*, 211 Ga. App. 205, 207 (2) (438 SE2d 679) (1993). "[T]he test is whether the defendant's acts created a reasonable apprehension on the part of the victim that an offensive weapon was being used, regardless of whether the victim actually saw the weapon." (Punctuation and footnote omitted.) *Faulkner v. State*, 260 Ga. App. 794, 795 (581 SE2d 365) (2003). Georgia courts have held that "threatening to shoot a victim while keeping a hand concealed shows the weapon element of armed robbery." (Citation omitted.) Id. at 795, n. 6. See also *McCluskey*, 211 Ga. App. at 207 (2); *Johnson v. State*, 195 Ga. App. 56, 57 (1) (a) (392 SE2d 280) (1990).

Here, the video from inside the taxicab shows that Rice reached from the backseat to shove an object into Minor's back while he demanded that Minor hand over his money and drive him where he wanted to go or else he would shoot him. Although Minor's testimony at trial was that he believed that Rice may have threatened him with his finger, he also testified that he complied with Rice's orders to hand over his money because he was not positive that Rice did not have a gun. Further, the video shows that because Minor was driving, he was unable to see what Rice was holding. The video was published for the jury, and they could see and hear Minor and judge for themselves how scared he was. "[I]t is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." (Citation and punctuation omitted.) *Richmond v. State*, 300 Ga. 892, 894 (799 SE2d 220) (2017). The evidence presented at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Rice was guilty of armed robbery as charged in Count Three. *Jackson v. Virginia*, 443 U. S. at 319 (III) (A).

2. In related enumerations of error, Rice argues that the trial court erred by allowing, over objection, Hennessy to compare the robber in his case to the man depicted in videos and still photographs of the two other robberies. We find no error.

The trial court allowed the State, over Rice's objection, to ask Hennessy to identify the robber in the videos showing the robberies of Minor and Wand. The State argued that Hennessy would be more likely to identify Rice correctly because Rice's appearance had changed from the time the videos were made to the time of trial. Specifically, Rice had grown a beard before trial. Further, Hennessey had testified that he was familiar with Rice's voice. In overruling the objection, the trial court noted that although "it is generally improper to allow a witness to testify as to an identity when that opinion evidence tends only to establish a fact that the average jurors could decide . . . I do believe . . . from having seen the case thus far that there's an added dimension in this case and so, I think that your arguments go more to the weight of the testimony than to its admissibility." In denying Rice's subsequent motion for new trial, the trial court noted that it was convinced by Hennessey's testimony regarding his recognition of Rice's voice. The State then played the videos from the in-vehicle cameras in the taxis driven by Wands and Minor. Hennessey testified that he recognized Rice's voice in those videos because "I deal with people

in the back of the cab that I don't see every night. I can remember someone's voice, and I remember that gentleman's voice."

Georgia's new Evidence Code allows "lay witness testimony in the form of opinions or inferences that are rationally based on the witnesses's perception, helpful to a clear understanding of the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge." *Glenn v. State*, 302 Ga. 276, 280-281 (II) (806 SE2d 564) (2017), citing OCGA § 24-7-701. In *Glenn*, supra, our Supreme Court concluded that a lay witness who was familiar with the defendant could give testimony identifying the defendant as one of the people in a surveillance video of the murder. In doing so, the Georgia Supreme Court adopted the test used by the Eleventh Circuit in *United States v. Pierce*, 136 F.3d 770, 774 (11th Cir. 1998) to decide whether there is "some basis for concluding that [a] witness is more likely to correctly identify" a defendant as "the individual depicted in the photograph," and thus to allow a lay witness identification. The factors cited in allowing such testimony in *Glenn* included poor quality of the surveillance video, the witness's prior familiarity with defendant, and the fact that defendant's appearance had changed since the time of the crime. *Glenn*, 302 Ga. at 281 (II). In *Harper v. State*, 213 Ga. App. 444 (445 SE2d 303) (1994), this Court affirmed a trial court ruling allowing an

8

investigating office to opine that the defendant, whose weight and hair length had changed since the date of the incident, was the person depicted in the videotape of a convenience store robbery because the officer had observed the defendant at the time of his arrest. Id. at 444, 448 (5) (applying the former Evidence Code).

Here, Rice's appearance had changed since the time of trial because he grew a beard, and Hennessy testified that he had the ability to recognize and memorize voices as a result of his job as a taxi driver and that he recognized the man in the videos as the man who robbed him and tried to get in his car at the Krystal restaurant. See *Glenn*, supra. The trial court did not abuse its discretion in admitting this testimony.

3. Rice argues that his trial counsel rendered ineffective assistance because he failed to object to certain jury instructions and closing argument, failed to properly move for a mistrial, and failed to adequately cross-examine a witness. We find no error.

To prevail on a claim of ineffective assistance of counsel, Rice must show that "the performance of his counsel was professionally deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been more favorable to him. See *Strickland v. Washington*, 466 U. S. 668, 667, 695

9

(104 S.Ct. 2052, 80 LE2d 674) (1984)." *Woodard v. State*, 296 Ga. 803, 814-815 (4) (771 SE2d 362) (2015). We review a trial court's ruling on a claim of ineffective assistance of counsel under the clearly erroneous standard. *Smith v. State*, 314 Ga. App. 583, 588 (4) (724 SE2d 885) (2012).

(a) Rice maintains that the trial court erred in charging the jury on the proof necessary to establish the offense of armed robbery. He argues that the portion of the charges to which he objects could easily have misled the jury into concluding that no offensive weapon had to be proved. He also contends that his trial counsel erred in failing to object to references to this jury instruction during closing argument. We disagree.

As noted above, OCGA § 16-8-41 (a) states that "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such a weapon." The trial court's jury instruction defined the term "offensive weapon" as follows:

> The presence and character of an offensive weapon or an article having the appearance of one may be established by direct or circumstantial evidence, and a conviction for armed robbery may be sustained even though the weapon or article used was neither seen nor accurately

10

described by the victim. What is required is some physical manifestation of a weapon or some evidence from which the presence of a weapon may be inferred. Furthermore, the test is whether the Defendant's act created a reasonable apprehension on the part of the victim that an offensive weapon was being used, regardless of whether the victim actually saw the weapon.

This objected-to jury instruction, however, has been approved by this Court and is a correct statement of Georgia law. See *Durham v. State*, 259 Ga. App. 829, 830-831 (578 SE2d 514) (2003) (approving jury instruction on armed robbery which noted that the presence of an offensive weapon could be proved by circumstantial evidence so long as the defendant's actions created a reasonable apprehension in the victim that such a weapon was being used); *Prins v. State*, 246 Ga. App. 585, 587-588 (2) (539 SE2d 236) (2000), disapproved on other grounds by *Miller v. State*, 285 Ga. 285, 286-287 (676 SE2d 173) (2009) (same). Moreover,

[i]t is patently clear that the charge, read as a whole, would not mislead the jury into concluding that no offensive weapon or appearance of an offensive weapon had to be proved. The charge as given by the trial court clearly explained the difference between armed robbery and robbery by intimidation without blurring the distinction between reasonable apprehension for armed robbery and apprehension of danger for robbery by intimidation, and without directing the jury's attention

11

away from the presence of a gun as required by the statute to the presence of the victim's reasonable apprehension.

(Citation and punctuation omitted.) *Durham*, 269 Ga. App. at 831. We find no error in trial counsel's failure to object to references to the above definition of "offensive weapon" during the jury instruction or closing argument.

(b) Rice next argues that his trial counsel rendered ineffective assistance of counsel by failing to properly renew his motions for mistrial on two occasions. We find no error.

Rice cites to *Harris v. State*, 340 Ga. App. 865 (798 SE2d 498) (2017) for the assertion that his trial counsel should have renewed the motions for mistrial. It is true that "[w]here the court gives a curative instruction and the defendant neither objects to the curative instruction nor renews his motion for mistrial, the issue is not preserved for appellate review." (Footnote omitted.) Id. at 872 (2) (a). However, in both instances where the trial court denied Rice's motion for a mistrial, the trial court did not give a curative instruction. Accordingly, this rule does not apply.

(c) Rice argues that his trial counsel rendered ineffective assistance of counsel by failing to cross-examine a witness when she told the 911 operator that the man who robbed Wands looked like Wesley Snipes.

Cynthia Hargrove testified that when she was working at Parker's in the early-morning hours of February 12, 2015, a customer asked her to call a cab for him. Hargrove identified the man from surveillance footage taken from Parker's that night. A short time after, the taxi driver ran into the store and told Hargrove to call the police because he had been robbed. In her 911 call, Hargrove told the operator that the robber looked like Wesley Snipes. At the motion for new trial, Rice's trial counsel testified that he did not cross-examine Hargrove about this statement because there was video of the robberies from which the jury could form their own conclusions about whether or not the person looked like Wesley Snipes. "The scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." (Footnote omitted.) *Simpson v. State*, 277 Ga. 356, 358 (4) (b) (589 SE2d 90) (2003). We find no error.

*Judgment affirmed. McFadden, P. J., and McMillian, J., concur.*