**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 24, 2020**

# In the Court of Appeals of Georgia

A19A2312. PARKER v. THE STATE.

MERCIER, Judge.

A jury found James Parker guilty of armed robbery, four counts of aggravated assault, and two counts of possessing a weapon during the commission of a crime. The trial court merged three of the aggravated assault charges into other counts and sentenced him for armed robbery, one count of aggravated assault, and the two weapons offenses. Parker appeals the denial of his motion for new trial, challenging the sufficiency of the evidence supporting three of his convictions. He also argues that the trial court erred in severing his trial from that of his co-defendant, admitting certain evidence, and instructing the jury. Finally, he claims that he received ineffective assistance of counsel at trial. We affirm.

1. In reviewing a challenge to the sufficiency of the evidence, we construe the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence. See *Bryson v. State,* 316 Ga. App. 512 (729 SE2d 631) (2012). We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the jury was authorized to find the defendant guilty of the charged offenses beyond a reasonable doubt. See id.

So viewed, the evidence shows that in June 2014, O. C. saw an advertisement for the sale of a television on Craigslist. He decided to purchase the television, and he and his wife, M. M., traveled to a designated location in Clayton County to complete the transaction. Once there, they met with Parker and a woman. O. C. verified that the television worked, paid the woman for it, then indicated to Parker that "it was a good deal and [he] would like to see one or two more" televisions to purchase. Parker responded that he had a friend who could sell O. C. additional televisions. O. C. gave Parker his phone number, and Parker promised to contact him with more information.

Parker subsequently called O. C. about the additional televisions, and they arranged to meet at a Clayton County apartment complex on June 18, 2014. O. C. traveled to the meeting location with M. M. and their three children in the family's

minivan. Parker greeted them in the complex parking lot, asking O. C. to go with him to an apartment to look at the merchandise. O. C. parked, left his family in the van, and walked with Parker. As they approached the apartment, Parker stopped to talk with another man, who was later identified as Matthew Hood. O. C. heard Hood tell Parker to bring O. C. "further back." Suspicious, O. C. stepped away from Parker and stated that he no longer wanted to purchase the televisions. Both men grabbed O. C., pulling him out of view of his car and family. Hood pointed a gun at O. C., and Parker asked O. C. for money, then put his hands in O. C.'s pockets. Finding nothing, Parker demanded to know where O. C. had put the money for the televisions. O. C. responded that it was in his vehicle.

Parker went to the minivan to get the money, leaving O. C. with Hood. Parker told M. M. to give him the money, but she refused to unlock the vehicle's doors. When Parker returned to the apartment building without the money, he and Hood began to argue, and Hood threatened O. C. with the gun. Imploring them not to hurt him or his family, O. C. told the men that he had $1,500 in the minivan that he would give them if they let him go. The men pulled and pushed O. C. to the minivan, each grasping one of O. C.'s arms. O. C. asked his wife to roll down the window, then told

her to give them the money. M. M. was crying, and Hood still had a gun in his hand, though it was "kind of hidden." As M. M. described:

> My husband told me to roll down the window and give them the money. He told me, give me the money. When I was looking at him his face was pale and his eyes were kind of lost in space. It was really strange. It was like he [was] telling me it was pretty much the end, so I reached for the money, I took it out of the purse and then [Hood] took it from me.

The two men left with the money, and O. C. and his family fled in the minivan, stopping at the first gas station they found to call the police.

Detectives interviewed Parker, who denied taking part in the crimes, but admitted that he was present during the first sales transaction, later spoke with O. C. about additional televisions, and gave O. C.'s phone number to Hood. According to Parker, Hood and another man he identified only as "DC" set up the second meeting and carried out the crimes. Both O. C. and M. M., however, positively identified Parker as one of the robbers.

Parker and Hood were indicted jointly for numerous offenses relating to the incident. The trial court ultimately determined that they should be tried separately, and the jury found Parker guilty of the armed robbery of M. M. (Count 1), two counts of aggravated assault of M. M. (Count 2 (assault with intent to rob) and Count 3

(assault with a deadly weapon)), two counts of aggravated assault of O. C. (Count 4 (assault with intent to rob) and Count 5 (assault with a deadly weapon)), and two counts of possessing a weapon during the commission of a crime (Count 6 (possession during the aggravated assault of M. M.) and Count 7 (possession during the aggravated assault of O. C.)).[1] Parker challenges the sufficiency of the evidence supporting his convictions on Counts 1, 3, and 6, all of which involved M. M.

(a) *Armed Robbery*. An armed robbery occurs "when, with intent to commit theft, [an individual] takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." OCGA § 16-8-41 (a). With respect to this offense, Count 1 of the indictment alleged that Parker and Hood took money from the immediate presence of M. M. "by use of an article having the appearance of a gun[.]

On appeal, Parker argues that the evidence was insufficient to support his conviction on this count because the State failed to prove that M. M. saw a gun. Circumstantial evidence, however, "is sufficient to establish the use of a weapon or device appearing to be a weapon, and a conviction for armed robbery may be

---

[1] At sentencing, the trial court merged Counts 2 and 3 into Count 1 and Count 5 into Count 4.

sustained even though the weapon or article used was neither seen nor accurately described by the victim" *Bryson,* supra at 515 (1). The State need not prove that the victim saw the weapon; it must only demonstrate that the victim "had a reasonable apprehension that an offensive weapon was used." Id,; see also *Rice v. State,* 351 Ga. App. 96, 98 (1) (830 SE2d 429) (2019) ("Some physical manifestation is required or some evidence from which the presence of a weapon may be inferred, but OCGA § 16-8-41 (a) does not require proof of an actual offensive weapon.") (citation and punctuation omitted).

O. C. testified that Hood was holding a gun when Hood and Parker walked him to the minivan to retrieve the money, and Hood had the gun out as he stood with O. C. next to the van, approximately four feet from M. M. Although M. M. did not definitively see the gun, she noticed "something shiny" that appeared to possibly be a pistol or knife in Hood's hand. M. M. also testified that she thought Parker and Hood "were going to do something to us" when they pushed her husband toward the van, and seeing the object in Hood's hand made her fearful. Given these circumstances, particularly Hood's use of the gun to control O.C., M. M.'s observation of an object in Hood's hand that she thought might be a pistol, and her fear that the men were going to hurt her family, the jury was authorized to find Parker

6

guilty beyond a reasonable doubt of armed robbery as alleged in Count 1 of the indictment. See *Rice,* supra (conviction for armed robbery of taxi driver upheld; "[a]lthough [driver's] testimony at trial was that he believed that [the defendant] may have threatened him with [a pointed finger hidden under a shirt], he also testified that he complied with [the defendant's] orders to hand over his money because he was not positive that [the defendant] did not have a gun"); see also OCGA § 16-2-20 (a) ("Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime.").

(b) *Aggravated Assault.* Parker also challenge his conviction under Count 3 of the indictment, which alleged that he assaulted M. M. with a gun. The trial court, however, merged this charge into Count 1 (armed robbery). Parker's claim that the evidence was insufficient as to Count 3, therefore, is moot. See *Long v. State,* 287 Ga. 886, 888 (1) (700 SE2d 399) (2010).

(c) *Possession of a Weapon During the Commission of a Crime.* Pursuant to OCGA § 16-11-106 (b) (1), a person commits a felony when he or she has "on or within arm's reach of his or her person a firearm . . . during the commission of, or the attempt to commit . . . [a]ny [felony] against or involving the person of another." Count 6 of the indictment charged that Parker and Hood had a firearm within arm's

7

reach "during the commission of the crime of aggravated assault against the person of [M. M.]."

Once again, Parker argues that this conviction cannot stand because M. M. "never observed a weapon" and did not clearly identify the object in Hood's hand. Among other things, however, Parker was charged with and convicted of committing aggravated assault by assaulting M. M. with the intent to rob. See OCGA § 16-5-21 (a) (1). And the evidence shows that Parker and Hood brought O. C. to the minivan under duress with the purpose of taking money from M. M. During the encounter, M. M. saw a shiny object in Hood's hand that she thought was possibly a gun, making her fearful that the two men intended to injure her and her family. These circumstances supported the jury's conclusion that Parker committed aggravated assault by assaulting M. M. with the intent to rob. See id.; OCGA § 16-5-20 (a) (2) ("A person commits the offense of simple assault when he or she . . . [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury."); *Gunter v. State,* 316 Ga. App. 485, 486 (1) (729 SE2d 597) (2012) (assault occurred when defendant threatened victim "in a way that put her in reasonable apprehension of immediately receiving a violent injury.").

8

Moreover, O. C. testified that Hood was holding a gun when he and Parker approached the minivan and stole money from M. M. Accordingly, the jury was authorized to find Parker guilty of possessing a weapon during the commission of the aggravated assault on M. M., as charged. See *Bryson,* supra 514 (1) ("Where a party has committed armed robbery and possession of a firearm during commission of a felony, an accomplice who is concerned in the commission of those crimes under OCGA § 16-2-20 is likewise guilty of both offenses, notwithstanding the fact that the accomplice did not have actual possession of the firearm.") (citations and punctuation omitted).

2. Prior to trial, the State moved to sever Parker's case from that of Hood, who was his co-indictee. The State argued that because Parker's custodial statement to police implicated Hood in the crimes, admission of this statement at a joint trial might violate Hood's constitutional rights under *Bruton v. United States*, 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968).[2] The trial court granted the motion, and Parker challenges that ruling.

---

[2] "A defendant's Sixth Amendment right to be confronted by the witnesses against him is violated under *Bruton,* when co-defendants are tried jointly and the testimonial statement of a co-defendant who does not testify at trial is used to implicate the other co-defendant in the crime." *Ardis v. State*, 290 Ga. 58, 60 (2) (a) (718 SE2d 526) (2011) (citation and punctuation omitted).

We find no error. As an initial matter, a defendant "lacks standing to complain of the trial court's decision to sever his trial from that of the co-indictee[] at the request of the state." *Rhodes v. State*, 267 Ga. App. 673, 675 (601 SE2d 139) (2004). Furthermore, a trial court exercises its sound discretion in resolving a motion to sever, and its ruling will not be reversed absent an abuse of discretion. See id. A trial court does not abuse its discretion by granting a severance "to avoid violation of a co-indictee's constitutional rights under *Bruton*[.]" Id. (citations omitted).

The State planned to present evidence of Parker's custodial statement to police, which directly implicated Hood in the crimes. Absent a severance, a *Bruton* violation would have occurred if the trial court had admitted the statement and Parker had elected not to testify. See *Rhodes,* supra at 674. The trial court, therefore, did not abuse its discretion in severing the trials to avoid a *Bruton* violation. See id. at 675.

3. Parker argues that the trial court erred in admitting into evidence a printout of the Craigslist advertisement that led to the first sales transaction. According to Parker, the advertisement was inadmissible hearsay that should have been excluded.

Regardless of whether the trial court erred in admitting the printed advertisement, however, Parker has not shown that any such error harmed him. On appeal, Parker contends that evidence of the Craigslist advertisement allowed the jury

10

to conclude that he met with O. C. before the robbery. But Parker admitted to police that he engaged with O. C. during the first sales transaction. And O. C. testified at length about his interactions with Parker prior to the robbery, including meeting with Parker to purchase the first television and speaking with Parker on the telephone to arrange a second meeting. O. C. further explained that he learned about the first television through a Craigslist advertisement, and his testimony provided details about the advertisement, such as the price sought for the television and its stated retail value. Accordingly, because the advertisement and any link it established between Parker and O. C. was cumulative of other testimony, admission of this evidence was harmless. See *Heard v. State*, 274 Ga. 196, 199 (6) (552 SE2d 818) (2001) (admission of hearsay "does not constitute reversible error unless appellant suffered harm"); *Sanchious v. State*, 351 Ga. App. 611, 616 (1) (b) (831 SE2d 843) (2019) ("[A]dmission of hearsay is harmless where it is cumulative of other properly-admitted evidence[.]").

4. Before the State played his recorded statement to police for the jury, Parker moved to exclude a portion of the statement in which he discussed other, unrelated crimes allegedly committed by Hood and DC. According to Parker, these comments improperly placed his character into evidence by suggesting that he was "hanging out

11

with" criminals. The trial court denied the motion, and Parker enumerates that ruling as error.

Pursuant to OCGA § 24-4-404 (b), "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith." Even if OCGA § 24-4-404 (b) applied to Parker's comments about Hood and DC, however, he cannot show harm from their admission. Parker did not connect himself to any prior misdeeds by Hood or DC. And he does not challenge the admissibility of his statements implicating Hood and DC in the crimes at issue here. By virtue of those incriminating statements, jurors knew that Parker was associating with criminals. We fail to see how statements regarding other past misdeeds by Hood and DC impacted the verdict. See *Virger v. State*, 305 Ga. 281, 294 (7) (a) (824 SE2d 346) (2019) (admission of other acts evidence harmless where "it is highly likely that the admission of the [evidence] did not affect the jury's verdicts").

5. Parker claims that the trial court erred in refusing to give his requested jury instructions on robbery, assault, and theft by taking as lesser-included offenses of armed robbery and aggravated assault. He contends that the jury should have been charged on the lesser-included offenses because conflicting evidence raised a dispute

12

as to whether a weapon had been used in the crimes. The evidence regarding use of a gun, however, was *not* in conflict. O. C. testified that Hood was holding a gun throughout the crimes. Although M. M. did not clearly see a gun, she observed something shiny in Hood's hand that appeared to be a weapon and frightened her.

The only evidence before the court, therefore, was that the crimes were committed with a weapon or were not committed at all. Accordingly, the trial court did not err in refusing to charge the jury on the lesser-included offenses of robbery, assault, and theft by taking. See *Johnson v. State*, 320 Ga. App. 161, 163 (3) (a) (739 SE2d 469) (2013) ("[W]here the undisputed evidence shows that an assault was committed with a deadly weapon, it is not error to refuse to give a charge on simple assault as a lesser included offense.") (citations and punctuation omitted); *Cook v. State*, 252 Ga. App. 86, 88 (3) (555 SE2d 759) (2001) ("Because the evidence shows without dispute the completion of the armed robbery as charged, and there is no evidence that a weapon was not used in the robbery, [the defendant] was not entitled to a jury charge on theft by taking as a lesser included offense"); *Arnold v. State*, 238 Ga. App. 314, 315 (2) (518 SE2d 716) (1999) (trial court did not err in refusing to charge on lesser included offense of robbery where evidence showed that defendant committed robbery with a weapon or not all).

6. Finally, Parker argues that he received ineffective assistance of counsel at trial. To prevail on this claim, Parker

> must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. If an appellant fails to meet his burden of proving either prong of [this] test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

*Lupoe v. State*, 284 Ga. 576, 578 (3) (669 SE2d 133) (2008) (citations and punctuation omitted).

(a) Parker contends that trial counsel provided ineffective assistance by failing to present an alibi defense. At the hearing on his motion for new trial, Parker testified that he told his attorney he was at a restaurant with his girlfriend at the time of the crimes and that his girlfriend would have testified on his behalf. Trial counsel, however, did not recall Parker ever mentioning an alibi, and he noted at the new trial hearing that his general practice was to pursue an alibi defense if a client claimed to have an alibi. Moreover, Parker failed to call his girlfriend as a witness at the hearing, so we do not know what alibi testimony she might have provided at trial.

14

The trial court was authorized to resolve any conflicts in the testimony at the new trial hearing against Parker. See *Perez v. State,* 331 Ga. App. 164, 169 (3) (b) (770 SE2d 260) (2015). And without a proffer of testimony from Parker's girlfriend, he cannot show that she would have provided favorable alibi testimony. See *Lupoe,* supra at 578-579 (3) (b); *Jones v. State*, 315 Ga. App. 427, 433-434 (3) (727 SE2d 216) (2012). Finally, although Parker criticizes trial counsel for not challenging the State's evidence regarding his presence at the scene of the crimes, "matters of reasonable trial strategy and tactics do not amount to ineffective assistance of counsel." *Fuller v. State*, 278 Ga. 812, 814-815 (2) (c) (607 SE2d 581) (2005) (citation and punctuation omitted). At the new trial hearing, trial counsel testified that he elected to challenge Parker's involvement in the crimes, rather than his presence at the scene, because the evidence showed that Parker was there. Given the testimony from both victims placing Parker at the crime scene, counsel's strategy was reasonable. See generally id. The trial court, therefore, did not err in denying this ineffective assistance claim. See *Lupoe; Fuller; Perez.*

(b) Parker argues that trial counsel was ineffective in failing to inform him about the State's plea offer. Parker, however, did not raise this particular claim in his written motion for new trial or during argument at the new trial hearing, and the trial

15

court did not rule on it. Accordingly, the claim has been waived. See *Norton v. State*, 320 Ga. App. 327, 333 (3) (739 SE2d 782) (2013) ("Where specific grounds for an ineffective assistance claim are not raised and ruled on in the trial court, they are waived and cannot be considered on appeal.").

*Judgment affirmed. Barnes, P. J. and Brown, J., concur.*